

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-76,916

**In re The State of Texas ex rel. JENNIFER THARP, Relator**

### ON STATE'S PETITION FOR A WRIT OF MANDAMUS
### IN CAUSE NO. CR2011-325 IN THE 433RD DISTRICT COURT
### OF COMAL COUNTY

      **KELLER, P.J., delivered the opinion of the Court in which KEASLER, HERVEY, COCHRAN, and ALCALÁ, JJ., joined. PRICE, J., filed a dissenting opinion in which JOHNSON, J., joined. WOMACK, J., concurred. MEYERS, J., did not participate.**

The State seeks the issuance of a writ of mandamus to require a trial judge to submit the entire case—both guilt and punishment—to the jury after the defendant pled guilty to the jury. We shall grant relief.

## I. BACKGROUND

### A. Plea Proceedings

Cary Faulkner was charged with felony DWI.[1] He reached an agreement with the State to plead guilty in exchange for a sentence of four years in prison, a $2000 fine, a two-year driver's-license suspension, and a deadly-weapon finding. When the trial judge, the Honorable Dibbrell

---

[1] Driving while intoxicated.

Waldrip, asked Faulkner where he lived, Faulkner mentioned that he went to high school with the judge's brother. Judge Waldrip and Faulkner then engaged in a brief conversation unrelated to the case. Before deciding whether to accept the plea agreement, Judge Waldrip ordered a presentence investigation (PSI).

In a hearing after the PSI, Judge Waldrip and the parties discussed the fact that Faulkner's felony probation had been revoked in Guadalupe County and he had been sentenced to four years. The present DWI sentence was to run concurrently with the sentence in the revocation case, and Judge Waldrip expressed his thought that if the sentences were concurrent, then the present case should carry a five-year sentence. The prosecutor explained that the deadly-weapon finding would ensure that Faulkner would serve at least half of his four-year term, which was not guaranteed in the revocation case.

Judge Waldrip said he was not inclined to make a deadly-weapon finding so that he could have "all options available to us as need be." The prosecutor would not agree to remove the deadly-weapon finding from the plea agreement, even in exchange for the higher sentence of five years. Judge Waldrip asked why, and the prosecutor responded that, without the deadly-weapon finding, the defendant "would then be eligible for shock probation, and I have no plans for Mr. Faulkner being on probation." Judge Waldrip then asked, "How would you control that at a jury trial." The prosecutor replied, "[O]nce the jury makes a finding of the deadly weapon, the court has a ministerial duty to enter it into the judgment and then he cannot get probation or shock probation." Judge Waldrip responded, "[p]resuming I put it in the jury charge," and asked if the prosecutor had a case to support his position. The judge asked the prosecutor if he wanted to "jump through those hoops" and concluded by suggesting that the prosecutor was "going to be doing a bunch of work for

nothing."

The prosecutor complained that the parties had worked out a deal, and he did not "know why there's a problem with that." Judge Waldrip responded that punishing the defendant "is not going to cure his addiction." The prosecutor then expressed discomfort with Judge Waldrip presiding over the case due to the judge's earlier conversation with Faulkner. Ultimately, Judge Waldrip rejected the plea agreement and set the case for a jury trial.[2]

## B. Trial

Before the beginning of trial, Faulkner elected to have the trial judge assess punishment. At trial, after the jury was sworn, Faulkner pled guilty. The prosecutor then asserted that Faulkner's plea rendered the trial a unitary proceeding, and therefore, the jury was to assess punishment. But Judge Waldrip ruled that punishment would be assessed by himself, not the jury.[3]

The State filed an application for emergency stay and a petition for a writ of mandamus with the Third Court of Appeals, which denied relief. The State then filed with this Court an application for emergency stay of the proceedings, a motion for leave to file a petition for a writ of mandamus, and a petition for a writ of mandamus. We granted a stay and requested a response from Judge

---

[2] The State subsequently filed a motion to recuse. Although he declined to recuse Judge Waldrip on the basis of partiality, the recusal judge said, "I think he did abuse his discretion." The recusal judge also suggested that the State could file a petition for a writ of mandamus to require the trial judge to submit a deadly-weapon issue to the jury, if that issue were raised by the evidence.

[3] The State asserts that Judge Waldrip refused to allow the deadly-weapon portion of the indictment to be read to the jury. Judge Waldrip asserts that the State sprang its theory that Faulkner's guilty plea converted the trial into a unitary trial before the jury for the first time after the jury was sworn. As the parties have not included a transcript of the trial proceedings occurring before the jury was sworn, neither of these assertions is substantiated by the record. Neither assertion is important to our resolution of the instant mandamus proceedings, however, and we will assume, for the sake of argument, that the State's assertion is not true and that Judge Waldrip's assertion is true.

Waldrip.[4]

## II. ANALYSIS

### A. Standards for Mandamus

To be entitled to mandamus relief, the relator must show that: (1) he has no adequate remedy at law, and (2) what he seeks to compel is a ministerial act.[5] With respect to the second requirement, the relator must show a clear right to the relief sought.[6] A clear right to relief is shown when the facts and circumstances dictate but one rational decision "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles."[7]

### B. No Adequate Remedy

The relator and respondent agree that the State has no adequate remedy at law. We agree.[8]

### C. Ministerial Duty

The State contends that, once a defendant pleads guilty before a jury, the law provides that the trial becomes unitary, requiring the jury to be instructed to return a verdict of guilty and to assess punishment. The State argues that Judge Waldrip's insistence that he will assess punishment usurps

---

[4] *In re State ex rel. Tharp*, No. WR-78,248-01 (Tex. Crim. App. August 17, 2012) (not designated for publication).

[5] *Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex. Crim. App. 2011).

[6] *Id.*

[7] *Id.* (quoting *State ex rel. Young v. Sixth Judicial District Court of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007)).

[8] *See Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 648-49 (Tex. Crim. App. 2005) ("But potential review at a later time is not always or automatically an adequate remedy: 'In some cases, a remedy at law may technically exist; however, it may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate.'").

the legal requirement that the jury assess punishment in this type of situation.

Judge Waldrip contends that there is no existing case law or statutory law requiring the action which Relator suggests is appropriate. Judge Waldrip contends that the discussion of unitary trials is essentially irrelevant, because it begs the true question: "whether the State may, by refusing to consent to a defendant's waiver of a jury, cause the defendant's election of the trial court as assessor of punishment to be abrogated." Arguing that the law is not clear or well settled, he attempts to distinguish some of the cases upon which the State relies. Judge Waldrip also contends that judge-assessed punishment after a plea of guilty to a jury is authorized by Articles 26.14 and 37.07 of the Texas Code of Criminal Procedure. Finally, he contends that the State's position would lead to absurd results because the defendant would be forced to play out a charade—in which he elects the trial judge to assess punishment, pleads not guilty to a jury, but then admits his guilt to the jury—in order to have punishment determined by the trial judge.

We disagree with Judge Waldrip's contention that the law does not clearly provide for the relief the State seeks. Article 26.14 provides:

> Where a defendant in a case of felony persists in pleading guilty or in entering a plea of nolo contendere, if the punishment is not absolutely fixed by law, a jury shall be impaneled to assess the punishment and evidence may be heard to enable them to decide thereupon, unless the defendant in accordance with Articles 1.13 or 37.07 shall have waived his right to trial by jury.[9]

This statute makes a jury trial on punishment the default option for a defendant who pleads guilty in a felony case. To avoid the default option, the guilty-pleading defendant must waive his right to a jury under either Article 1.13 or Article 37.07. To waive a jury under Article 1.13, the defendant

---

[9] TEX. CODE CRIM. PROC. art. 26.14.

must have the State's consent.[10] The relator and respondent agree that the State did not and will not consent in this case. Judge Waldrip's contention is that Faulkner could and did waive his right to a jury under Article 37.07. That contention is not correct.

Article 37.07 provides in relevant part:

(a) In all criminal cases, other than [certain] misdemeanor cases . . ., *which are tried before a jury on a plea of not guilty*, the judge shall, before argument begins, first submit to the jury the issue of guilt or innocence of the defendant of the offense or offenses charged, without authorizing the jury to pass upon the punishment to be imposed. . . .

(b) [I]f a finding of guilty is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense; provided, however, that . . . [in] cases where the defendant so elects in writing before the commencement of the voir dire examination of the jury panel, the punishment shall be assessed by the same jury . . . . If a finding of guilty is returned, the defendant may, with the consent of the attorney for the state, change his election of one who assesses the punishment.[11]

Over forty years ago, in *Rojas v. State*, we construed the interplay between Article 26.14 and this portion of Article 37.07.[12] In that case, after the defendant pled guilty to a jury, he objected that the court's charge did not instruct the jury to determine punishment.[13] The trial judge overruled this objection and conducted a punishment hearing to the bench.[14] We held, unequivocally, that "Article 37.07, supra, by its terms applies to pleas of not guilty alone."[15] We further explained that "[i]n

---

[10] *Id.*, art. 1.13(a) ("the waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state").

[11] *Id.*, art. 37.07, §§ 2(a), (b) (emphasis added).

[12] 404 S.W.2d 30 (Tex. Crim. App. 1966).

[13] *Id.* at 30.

[14] *Id.* at 30-31.

[15] *Id.* at 30.

cases where Article 37.07, supra, is applicable, the time for waiving the right to have the jury assess the punishment does not arrive until such jury has found the defendant guilty" and thus, it could not be said that the defendant had waived a jury "in accordance with Article 37.07."[16] We further observed that a former draft of the Code "had made provisions for election prior to the selection of the jury" and that "[t]his, and the possibility that the plea of guilty may be withdrawn during the trial, may explain the reference to Article 37.07 in Article 26.14."[17] So the trial judge erred in refusing to submit the question of punishment to the jury.[18] Stated succinctly, *Rojas* construed Article 26.14 as providing that a plea of guilty results in punishment being determined by a jury unless the defendant waives a jury with the State's consent.

There are only two factual differences of any note between the present case and *Rojas*. In *Rojas*, it was the defendant, rather than the State, who was complaining that the trial judge had usurped the function of the jury. This factual difference is immaterial, as Article 26.14 codified a long-standing rule that was intended primarily for the State's benefit:

> It is not a provision, insofar as it requires evidence to be submitted, which is intended solely for the benefit of the defendant. It is intended, also, and more especially, to protect the interests of the State, by *preventing* aggravated cases of crime to be covered up by the plea of guilty, so as to allow the criminal to escape with the minimum punishment fixed by law.[19]

The second difference is that Article 37.07 now provides that the defendant must elect a jury

---

[16] *Id.* at 31.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 33-34 (op. on State's motion for rehearing) (quoting *Harwell v. State*, 19 Tex. App. 423 (1885)) (emphasis in *Rojas*). We are not suggesting that Judge Waldrip's conduct in the present case was any sort of attempt to "cover up a crime by the plea of guilty."

for punishment before the commencement of voir dire instead of after a verdict of guilty.[20]  The timing of the election requirement in our current statute seems to be the same as the "former draft of the Code" to which we had referred in *Rojas*.  But our reference to the former draft of the code was in conjunction with the "the possibility that the plea of guilty may be withdrawn during trial,"[21] which is based upon our longstanding rule that a defendant has an unconditional right to change his plea from "guilty" to "not guilty" at any time before the jury retires for deliberations.[22]  If the defendant changes his plea from "guilty" to "not guilty," then Article 37.07 would become applicable, and if Article 37.07 required the defendant to elect a jury determination of punishment before jury selection, then a mid-trial change of plea could cause that earlier election (or failure to elect) to suddenly become controlling.

In our opinion on the State's motion for rehearing in *Rojas*, we made clear that several aspects of our statutory scheme, which remain substantively the same today, supported our conclusion that the Article 37.07 punishment-election provision did not apply to guilty pleas.[23]  We pointed to several provisions in Article 36.01, and, more importantly, we asked, "If it was the intention of the Legislature that the alternate procedure provided in Art. 37.07 should apply where

---

[20]  When Article 37.07 was first adopted, it required the defendant to make his election "upon the return of a finding of guilty."  TEX. CODE CRIM. PROC. art. 37.07, § 2(b) (Vernon's 1966).  In 1967, the statute was amended to require the defendant's election "at the time he enters his plea in open court."  TEX. CODE CRIM. PROC. art. 37.07, § 2(b) and historical note (Vernon's 1981).  In 1985, the statute was amended to reflect the current requirement that the election be made before the commencement of voir dire.  TEX. CODE CRIM. PROC. art. 37.07 § 2(b) (West 1985).

[21]  *Rojas*, 404 S.W.2d at 31.

[22]  *See Murray v. State*, 302 S.W.3d 874, 883 (Tex. Crim. App. 2009) (referring to historical practice).

[23]  *Rojas*, 404 S.W.2d at 33-35.

the plea is guilty, why did they not say so in said Article instead of saying 'and where the plea is not guilty — .'?"[24]

In 1967, the phrase "and where the plea is not guilty" was changed to the current wording "which are tried before a jury on a plea of not guilty."[25] A few years after our decision in *Rojas* we quoted the current language in italics to emphasize that Article 37.07's bifurcated procedure is not applicable to pleas of guilty in a felony case before a jury.[26] We explained: "Since the very purpose of offering evidence before a jury on a plea of guilty in a felony case is to enable them to properly assess the punishment, it seems a rather useless thing to empanel a jury and then not permit them to assess the punishment after hearing evidence offered for that purpose."[27] Even in a capital case, we have held, based on the rule for non-capital felonies, that a plea of guilty to a jury eliminates guilt as an issue to be determined and makes it "proper for the trial judge in his charge to instruct the jury to return a verdict of guilty, charge the jury on the law as to the punishment issues and then instruct them to decide only those issues."[28] We have more recently declared that "pleas of guilty in felony

---

[24] *Id.* at 35. *See* TEX. CODE CRIM. PROC. art. 37.07, § 2(b) (Vernon's 1966).

[25] *See* TEX. CODE CRIM. PROC. art. 37.07, § 2(b) and historical note (Vernon's 1981).

[26] *Ring v. State*, 450 S.W.2d 85, 87 (Tex. Crim. App. 1970) (statutory language italicized in original); *see also Basaldua v. State*, 481 S.W.2d 851, 853 (Tex. Crim. App. 1972) (italicizing the same language for the same proposition); *Brown v. State*, 507 S.W.2d 235, 237 (Tex. Crim. App. 1974) (same).

[27] *Ring*; 450 S.W.2d at 87; *see also Brown v. State*, 487 S.W.2d 86, 87 n.1 (Tex. Crim. App. 1972) ("Where, as here, there is a plea of guilty before the jury, there is no reason for a separate trial as to punishment.").

[28] *Holland v. State*, 761 S.W.2d 307, 313 (Tex. Crim. App. 1988).

cases either before a judge or jury have always been unitary,"[29] and that, "[o]nce the guilty plea is entered, the procedure becomes a 'unitary trial' to determine the remaining issue of punishment."[30]

We do not agree with Judge Waldrip's claim that the "discussion of unitary trials is essentially irrelevant." We think it is crucial. If guilt and punishment are determined by different finders of fact, then the trial is necessarily a two-stage trial. By definition, a unitary trial is not a two-stage trial. As the above discussion indicates, both statute and caselaw are unequivocal that a plea of guilty causes the trial to become unitary. So, in such a trial there is only one finder of fact and that finder of fact determines the issue of punishment.

Judge Waldrip contends that an absurd result flows from this rule because the defendant would merely go through the charade of pleading not guilty but admitting guilt. One answer to this contention is that the statutory scheme nevertheless requires that guilty pleas give rise to unitary trials, whatever one may think of the wisdom of that scheme. Another is that the facts of the present case refute Judge Waldrip's contention. During the plea proceedings, the State expressed its intent to have the deadly-weapon issue decided by a jury. The State may be able to obtain a deadly-weapon finding from the jury at the guilt phase of trial either through the wording of the offense submission in the jury charge or through a special issue.[31] And also, the defendant's plea of guilty, being an

---

[29] *Carroll v. State*, 42 S.W.3d 129, 134 n.1 (Tex. Crim. App. 2001).

[30] *State v. Davis*, 349 S.W.3d 535, 540 (Tex. Crim. App. 2011) (quoting *Carroll v. State*, 975 S.W.2d 630, 631 (Tex. Crim. App. 1998)).

[31] *See Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (the law "directs the trial court to submit to the jury any issue that is raised by the facts" including deadly-weapon findings); *Hill v. State*, 913 S.W.2d 581, 584 (Tex. Crim. App. 1996) (deadly-weapon question could be decided at guilt or punishment phase of trial); *Luken v. State*, 780 S.W.2d 264, 268 (Tex. Crim. App. 1989) (same); *Polk v. State*, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985) (jury finding of guilt of offense as pled in the indictment can constitute a deadly-weapon finding).

acknowledgment of responsibility, could conceivably favorably impact the punishment determination.[32]

.                                   **D. Clean Hands and Right to a Fair Trial**

Judge Waldrip contends that the State has unclean hands because it kept secret its plans to have the jury determine punishment via a unitary trial, and that by failing to share its plans, the State has wasted the time of the trial judge, the venire, and the jury that was actually selected. He also contends that, if the State succeeds, Faulkner will have been deprived of his constitutional right to a fair trial because the State's strategy of having the jury assess punishment caused defense counsel not to conduct a vigorous voir dire on that issue.[33]

Further, Judge Waldrip contends that, if we rule in the State's favor, Faulkner's lawyer will undoubtedly move for a mistrial, and if a mistrial is granted, further prosecution will be barred by double jeopardy because the State goaded the defense into moving for a mistrial. Judge Waldrip also contends that if retrial is not barred, then Faulkner will plead "not guilty" before the jury, admit guilt at trial, and the trial judge will still assess punishment.[34]

But the fact that a guilty plea to a jury results in a unitary trial before that jury, even after the

---

[32] *See Randolph v. State*, 353 S.W.3d 887, 892 (Tex. Crim. App. 2011) ("One can accept responsibility by pleading guilty" though a plea of not guilty is not itself an acceptance or denial of responsibility).

[33] In an affidavit attached to Judge Waldrip's response, defense counsel states that, had she known the State would take the position that a guilty plea required a jury trial on punishment, then her voir dire examination would have been "much more aggressive and expansive, and more importantly, would have included punishment issues and, specifically, examination concerning the use of my Client's vehicle as a deadly weapon."

[34] In her affidavit, defense counsel also states that, had she known about the position the State intended to take, she would have counseled her client "that the only way the trial court could have assessed punishment, as he desired, would be to plead not guilty."

enactment of Article 37.07, has been well-established law for over forty years. It was the defendant's decision to plead guilty. He could have chosen to plead not guilty, and the trial would have been bifurcated, with the trial judge assessing punishment. The State is not responsible for the defendant's strategic choices. There never was an option to plead guilty before the jury and have the trial judge assess punishment. If Faulkner and his defense attorney wanted the trial judge to assess punishment, Faulkner's only option was to plead not guilty.

And if that's the option Faulkner would have chosen if he had been correctly advised about the law, then he still had the opportunity to do so after the State revealed its belief that the trial had become unitary. He could have changed his plea of guilty to not guilty and caused the trial to become bifurcated. He may still have that option.

As for the argument that the State has wasted the jury's time, no one has suggested that the statutes permit Judge Waldrip to decide both guilt and punishment without the State's consent. Some sort of jury trial was going to occur regardless of when the State revealed its belief that a guilty plea would cause the trial to become unitary. It was inevitable that the jurors would sit through the jury-selection process and listen to evidence presented at some sort of hearing.

But, if the present case had proceeded on a plea of guilty in the manner Judge Waldrip originally intended, a jury trial would have occurred in which the only issue the jury would decide—guilt—was already determined by a guilty plea. Under those circumstances, the jurors would have been sent back to the jury room with a jury charge that instructed them to find the defendant guilty and did not direct them to decide any other matter. Conducting jury selection, but giving the jury no real decision-making power, would seem like more of a waste of time. By contrast, the State's intended course of action would result in jurors deciding punishment if Faulkner

pled guilty or deciding guilt if Faulkner pled not guilty. Even if Faulkner pled not guilty, and that plea were accompanied by a defense concession at trial that Faulkner was in fact guilty, the jury would at least have something to decide, even if that decision seems like a foregone conclusion.

But, as explained above, there may be other consequences to having a trial on a plea of not guilty. The State may be able to obtain a deadly-weapon finding from the jury at the guilt phase of trial. And pleading not guilty forgoes the explicit acknowledgment of responsibility that a plea of guilty provides. A defendant who pleads not guilty could explicitly acknowledge responsibility by testifying, but then he would be subject to cross-examination.

We conditionally grant mandamus and direct Judge Waldrip to proceed with trial, submitting all relevant issues, including punishment, to the jury so long as Faulkner's plea of guilty remains in place. The writ of mandamus will issue only in the event Judge Waldrip fails to comply within thirty days of the date of this opinion.

Delivered: November 14, 2012
Publish