

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP-76,953 & AP-76954

### In re State of Texas ex rel. DAVID P. WEEKS

## ON STATE'S PETITIONS FOR WRIT OF MANDAMUS AND PROHIBITION AGAINST THE TENTH COURT OF APPEALS IN CAUSE NO. 24,083 IN THE 278TH DISTRICT COURT OF WALKER COUNTY

**KELLER, P.J., delivered the opinion of the Court in which MEYERS, JOHNSON, KEASLER, HERVEY, COCHRAN and ALCALÁ, JJ., joined. PRICE, J., filed a dissenting opinion in which WOMACK, J., joined.**

The present mandamus action arises from a capital-murder prosecution that has reached the jury-charge portion of the guilt stage of trial. The trial judge's proposed charge would submit to the jury the "conspiracy" theory of the law of parties[1] but not the "intent to promote or assist" theory of the law of parties.[2] Moreover, in submitting the "conspiracy" theory, the trial judge's proposed charge would require the State to prove that the defendant should have anticipated the particular manner and means by which his co-conspirator killed the victim. The State seeks the issuance of a writ of mandamus to require the submission of the "intent to promote or assist" theory of the law

---

[1] *See* TEX. PENAL CODE § 7.02(b).

[2] *See id.*, § 7.02(a)(2).

of parties and to require the submission of the "conspiracy" theory of the law of parties without any manner-and-means restriction. We conditionally grant relief.

## I. BACKGROUND

### A. Trial

John Ray Falk, Jr. and Jerry Duane Martin escaped from prison, and during that escape, Susan Canfield, a prison guard, was killed. Martin has been convicted of capital murder for his role in the killing, and that conviction was recently affirmed by this Court.[3] Falk is currently being prosecuted for his role in the incident. According to excerpts of testimony from the court reporter's record in Falk's case,[4] Canfield was on horseback, attempting to prevent Falk and Martin from escaping, when Falk jabbed a stolen revolver into Canfield's side and obtained her rifle. After disarming Canfield, Falk backed away. As Falk was backing away, Martin drove a pickup truck into Canfield and her horse—causing injuries that ultimately led to her death. Falk then jumped into the truck, and the truck sped away.

In deciding to omit instructions on the "intent to promote or assist" theory of the law of parties, Judge Kenneth Keeling, the trial judge, stated that Falk was already "on down the road"

---

[3] *See In re State ex rel. Weeks*, No. 10-12-00443-CR, slip op. at 2 (Tex. App.–Waco December 12, 2012) (discussing Martin's case); *see also Martin v. State*, No. AP-76,317, 2012 Tex. Crim. App. Unpub. LEXIS 1160 (October 31, 2012) (not designated for publication).

[4] The court of appeals received rough-draft record excerpts containing the testimony of prison guards Larry Grissom and Joe Jeffcoat. The State has since obtained, and presented to us, certified copies of this testimony. Our review reveals no material difference in content between the rough draft and certified copies.
We note that the court of appeals did not cite to the rough-draft record excerpts that were before it, but "[b]riefly, and for background purposes only," the court of appeals set out some of the events as described by our opinion in Martin's case. *Weeks*, No. 10-12-00443-CR, slip. op. at 2-3; *see also Martin*, 2012 Tex. Crim. App. LEXIS 1160, at 5-6, 9. This recitation of the evidence from *Martin* does not differ materially from the evidence contained in the record excerpts in Falk's case.

when his co-defendant struck the complainant with a vehicle, and therefore, Judge Keeling did not

see any evidence to support inclusion of the instruction:

> [U]nder 7.02 parties, 7.02(a)(2), I do not see any evidence where he—this is talking about John Falk, Jr. This is the aiding, abetting part of the driving the vehicle into Canfield or her horse. I don't see any evidence where he solicited, encouraged it, directs it, aids it, or attempts to aid the other person to commit the offense of driving the vehicle into the horse or her. So I don't think you can go under 7.02(a)(2) of the parties statute. The evidence, as I recall it, particularly from Mr. Isaacs—and there was another witness who was under the shed, I can't remember his name, but they testified, as I recall, that Mr. Falk had already gotten the rifle and that he was on down the road at the time of the collision of this vehicle and Mrs. Canfield, okay?[5]

With respect to the conspiracy theory of the law of parties, Judge Keeling's proposed

instructions would apply the law to the facts as follows:

> You must determine whether or not the State has proved, beyond a reasonable doubt, four elements. The elements are that:
>
> 1. in Walker County, Texas, on or about September 24, 2007, JOHN RAY FALK, JR. joined a conspiracy with JERRY MARTIN to commit the felony offense of Escape; and
>
> 2. in an attempt to carry out this conspiracy, JERRY MARTIN intentionally or knowingly caused the death of SUSAN CANFIELD by striking her with a deadly weapon, to wit: a motor vehicle or by striking the horse she was riding with a deadly weapon to wit: a motor vehicle that in its manner of use was capable of causing death or serious bodily injury; and
>
> 3. the murder, if any, was committed by JERRY MARTIN in furtherance of the conspiracy, if any, to commit the felony offense of Escape; and
>
> 4. JOHN RAY FALK, JR. should have anticipated that JERRY MARTIN would intentionally or knowingly cause the death of SUSAN CANFIELD *by striking her with a deadly weapon, to wit: a motor vehicle or by striking the horse she was riding with a deadly weapon, to wit: a motor vehicle that in its manner of use was capable of causing death or serious bodily injury during the commission of felony escape, if*

---

[5] *See Weeks*, No. 10-12-00443-CR, slip op. at 8.

*any, which was the subject of the alleged conspiracy.*[6]

The State's complaint with respect to the conspiracy instructions is that the italicized language in element four is not required and improperly increases the State's burden of proof.

### B. Court of Appeals

The State filed a petition for writ of mandamus with the Waco Court of Appeals. Rejecting the State's claim with respect to the "intent to promote or assist" theory of the law of parties, the court of appeals concluded that Judge Keeling's "assessment of the evidence to determine whether it supports the inclusion of an instruction under section 7.02(a) in the court's charge is *not* a ministerial act, but rather is an exercise of [his] judgment and judicial determination" and "to the extent that there is a dispute about the state of the evidence, we may not resolve it in an original mandamus proceeding."[7]

With respect to the State's complaint about the proposed conspiracy instructions, the court of appeals acknowledged that "[n]o party to this proceeding has cited any authority that specifically supports the inclusion in the fourth element that the State must prove that Falk should have anticipated the specific manner and means by which Martin caused the death of Canfield, nor has our research located any."[8] "But," the court of appeals concluded, "there is likewise no specific authority that the inclusion of the manner and means in the fourth element of section 7.02(b)

---

[6] *See id.* at 10 (emphasis in *Weeks*). We note that Judge Keeling's application instructions concerning coconspirator liability (except for the italicized portion and the unnecessary phrase "if any") follow the format set out in the Texas Criminal Pattern Jury Charges: Crimes Against Persons, § C4.5, at 72-74 (State Bar of Texas 2011). This modern format may assist both the members of the jury and the advocates who must explain the jury instructions to the jury.

[7] *Weeks*, No. 10-12-00443-CR, slip op. at 9.

[8] *Id.* at 13.

conspiracy is erroneous."[9]  From this, the court of appeals further concluded that the issue was not well-settled law such that Judge Keeling had a ministerial duty to omit the language in the application paragraph of the jury charge.[10]  But in a footnote, the court of appeals expressed the following reservation to its conclusion:

> While we conclude that the law is not "well-settled" on this specific issue, which appears to be one of first impression under Texas law, we are of the strong opinion, based on the authorities cited above, that Texas law does not support including in the fourth element that the State must prove that Falk should have anticipated the specific manner and means by which Martin caused the death of Canfield. Irrespective of the indictment's manner-and-means allegation, no statutory or case law supports its inclusion.  Furthermore, two of the recognized criminal pattern jury charge books do not include it.[11]

## II. ANALYSIS

### A. Mandamus Standards

In addressing whether a relator is entitled to mandamus relief against a court of appeals that has denied mandamus relief against a trial court, we decide *de novo* whether the relator was entitled to mandamus relief against the trial court.[12]  To be entitled to mandamus relief, the relator must show two things: (1) that he has no adequate remedy at law, and (2) that what he seeks to compel is a

---

[9]  *Id.*

[10]  *Id.* at 13-14.

[11]  *Id.* at 14 & n.7.

[12]  *Bowen v. Carnes*, 343 S.W.3d 805, 810 n.6 (Tex. Crim. App. 2011) ("The State . . . argues that it is the court of appeals's denial of mandamus relief that we should be reviewing rather than the respondent's ruling directly . . . . [I]n practice it makes little difference whether we purport to review the court of appeals's mandamus ruling or the trial court's order . . . . Either way, we review the appropriateness of the trial court's conduct . . . . essentially by undertaking a 'de novo application of the two pronged test' for mandamus relief.")

ministerial act.[13]

With respect to the "no adequate remedy at law" requirement, we have said that a remedy at law, though it technically exists, "may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate."[14]

The ministerial-act requirement is satisfied if the relator can show a clear right to the relief sought.[15] A clear right to relief is shown when the facts and circumstances dictate but one rational decision "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles."[16] Although we have sometimes suggested that a legal issue's status as one of first impression meant that the law was not well-settled,[17] we have since clarified that an issue of first impression can sometimes qualify for mandamus relief.[18]

At least two of our mandamus cases—*Patrick* and *Poe*—contain dissents that were

---

[13] *In re State ex rel. Tharp*, 2012 Tex. Crim. App. LEXIS 1549, at 5 (Tex. Crim. App. November 14, 2012); *Bowen*, 343 S.W.3d at 810.

[14] *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 648-49 (Tex. Crim. App. 2005); *see also Tharp*, 2012 Tex. Crim. App. LEXIS 1549, at 6 & n.8 (citing *Greenwell*).

[15] *Bowen*, 343 S.W.3d at 810.

[16] *Id.*

[17] *See Banales v. Court of Appeals for the Thirteenth Judicial Dist.*, 93 S.W.3d 33, 36 (Tex. Crim. App. 2002); *State ex rel. Hill v. Court of Appeals for the Fifth Dist.*, 67 S.W.3d 177, 181 (Tex. Crim. App. 2001); *State ex rel. Hill v. Court of Appeals for the Fifth Dist.*, 34 S.W.3d 924, 928-29 (Tex. Crim. App. 2001).

[18] *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 199-203 (Tex. Crim. App. 2003) (State had a clear right to relief to prohibit camera from being in the jury room though issue had never been addressed before by this Court); *State v. Patrick*, 86 S.W.3d 592, 594-96 (Tex. Crim. App. 2002) (absence of jurisdiction for what trial judge ordered); *See also Poe*, 98 S.W.3d at 219-20 (Keller, P.J., dissenting) (acknowledging two situations in which an issue of first impression could be a basis for mandamus relief).

predicated at least in part upon the fact that the issue was one of first impression.[19]  One lesson from *Patrick* and *Poe* is that an issue of first impression can sometimes qualify for mandamus relief when the factual scenario has never been precisely addressed but the principle of law has been clearly established.

## B. No Adequate Remedy at Law

Before the court of appeals, the parties did not dispute that the State had no adequate remedy at law because it could not appeal the trial judge's decision.[20]  Falk and Judge Keeling contend, however, that the State now has an adequate remedy at law because Judge Keeling has agreed to reconsider his rulings.  The factual basis for this contention is an email written by the judge, which states in relevant part:

> I am willing to have a hearing on the state[']s motion, defense motions and anything else about this case on Monday morning at 9:00 a.m. in Brazos County, if all of the attorneys can be present.  PROVIDED, there are no proceedings pending in the Court of Criminal Appeals or any other court of appeals.  PROVIDED FURTHER, that the case can be argued upon completion of the hearing.

In essence, Judge Keeling's email requires the State to abandon its mandamus action in exchange for a reconsideration that affords the State no guarantee that the earlier rulings will be changed.  If the State accepted Judge Keeling's offer and Judge Keeling ultimately decided to let his

---

[19]  *Patrick*, 86 S.W.3d at 598 & n.2, 600 & n.12 (Cochran, J., dissenting) (noting earlier case suggesting that mandamus is unavailable when the issue is one of first impression); *Poe*, 98 S.W.3d at 219-21 (Keller, P.J., dissenting) (acknowledging two situations in which an issue of first impression can be a basis of mandamus relief but contending that the case fell within neither of those situations), 221 (Keasler, J., dissenting) (contending that the Court has "created law where there is none").

[20]  *Weeks*, No. 10-12-00443-CR, slip op. at 5.  *See also Tharp*, 2012 Tex. Crim. App. LEXIS 1549, at 6 & n.8; *Greenwell*, 159 S.W.3d at 648-49 ("potential review at a later time is not always or automatically an adequate remedy").

earlier rulings stand, then the State would lose any ability to have that decision reviewed. We do not agree with Judge Keeling that his proposed course of action constitutes an adequate remedy for mandamus purposes.[21]

Falk also contends that the State has an adequate remedy because it can raise a cross-point if Falk is convicted and appeals.[22] Whether Falk will be convicted, and if so, whether he will appeal, is speculative. This remedy is too uncertain to constitute an adequate remedy.[23]

### C. Ministerial Duty

#### 1. *The State's Entitlement and the Law of Parties*

The trial court is required to give the jury a written charge "setting forth the law applicable to the case."[24] In *Grey v. State*, we explained that "the State is entitled to pursue the charged offense and, therefore, is entitled to receive a response from the jury on whether the defendant is guilty of the charged offense."[25] "It is the State," we said, "that chooses what offense is to be charged."[26] The State's charging choices, then, become part of the law applicable to the case.

With regard to offenses other than the charged offense, we have held that the State's power to choose what offense to pursue meant that the State was not required to prove that the defendant was guilty only of the lesser-included offense in order to obtain submission of the lesser-included

---

[21] *See Tharp* and *Greenwell, supra*.

[22] *See* TEX. CODE CRIM. PROC. art. 44.01(c).

[23] *See Greenwell*, *supra*.

[24] TEX. CODE CRIM. PROC. art. 36.14.

[25] 298 S.W.3d 644, 649-50 (Tex. Crim. App. 2009).

[26] *Id.* at 650.

offense.[27]   The State could pursue the charged offense alone, or the State could also obtain instructions on a lesser-included offense, or the State could abandon the charged offense altogether in favor of prosecuting the lesser-included offense.[28]   It was the State's prosecution, so it was the State's choice.

This concept—that the State chooses what offense to pursue—also applies to legal theories available to prove the charged offense.  For example, it cannot be seriously maintained that the trial judge could refuse altogether to submit a charged offense to the jury when the evidence supports its submission and no legal reason otherwise exists to preclude its submission.  Likewise, one cannot seriously maintain that the trial judge could arbitrarily refuse to submit an alternative statutory method of committing the offense if that method were in the charging instrument and supported by the evidence.

The same is true with respect to the law of parties.  Regardless of whether it is pled in the charging instrument, liability as a party is an available legal theory if it is supported by the evidence.[29]   In the watershed case of *Malik v. State*, our formulation of the standard for sufficiency of the evidence as based on the "hypothetically correct jury charge" was motivated in part by the existence of issues such as the law of parties and the doctrine of transferred intent.[30]   Party liability is as much an element of an offense as the enumerated elements prescribed in a statute that defines

---

[27]  *Id.*

[28]  *Id.*

[29]  *Marable v. State*, 85 S.W.3d 287, 287-88 & n.3 (Tex. Crim. App. 2002).

[30]  953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997).

a particular crime.[31]  If party liability can legally apply to the offense at issue and is supported by the evidence, then the State is entitled to its submission.[32]

We also explained in *Malik* that the hypothetically correct jury charge is one that  "does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability."[33]  This statement is consistent with the fact that it is the State's prosecution, and the State is entitled to pursue any available theories of criminal liability to the broadest extent possible under the charging instrument and the evidence.  If multiple theories of party liability are supported by the evidence, the trial judge may not arbitrarily limit the State to one of the theories.  And the trial judge may not restrict the presentation of a theory of party liability if the restriction is not required by the charging instrument or by the evidence.

### 2. § 7.02(a)(2)

By virtue of § 7.02(a)(2), a person is criminally responsible for the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."[34]  The trial judge stated that there was no evidence that Falk engaged in any conduct that solicited, encouraged, aided, or attempted to aid "in driving the vehicle into Canfield or her horse" because Falk was already down

---

[31]  *See* TEX. PENAL CODE § 7.02; *Malik*, *supra*.

[32]  TEX. CODE CRIM. PROC. art. 36.14 (trial judge must give jury written charge "setting forth the law applicable to the case"); *Romo v. State*, 568 S.W.2d 298, 302 (Tex. Crim. App. 1978) (opinion on State's motion for rehearing) ("In a case where a charge on the law of parties is applicable, it is usually the State that insists on and is entitled to have such a charge, including an application of the law to the facts, submitted to the jury.")

[33]  953 S.W.2d at 240.

[34]  TEX. PENAL CODE § 7.02(a)(2).

the road at the time of the collision. We take this to mean that the trial judge believed that the evidence showed that Falk was a significant distance away when Canfield was hit. But, first, the offense, within the meaning of § 7.02(a), is not "driving the vehicle into Canfield or her horse." The offense is capital murder. Second, no one disputes that there was evidence that Falk disarmed Canfield.[35] Regardless of the distance between Falk and Canfield at the time of the collision, a rational trier of fact could conclude that the act of disarming Canfield aided Martin's commission of capital murder.[36] By focusing on the credibility and weight of the State's evidence, Judge Keeling converted a matter-of-law determination based on the existence of some evidence to support a liability theory into a factual finding on the reasonableness of the State's theory. This ruling by the trial judge is contrary to established law that requires the trial court to instruct the jury on the law applicable to the case, including all theories of liability requested by the State for which there is some evidence in the record.

We are not persuaded otherwise by the court of appeals's conclusion that the trial judge's

---

[35] In his comments at the jury-charge conference, quoted by the court of appeals, *see* this opinion, *ante*, Judge Keeling acknowledged that appellant took the rifle from Canfield. In addition, this fact was supported by Grissom and Jeffcoat's testimony. For this reason, we need not address the argument that Judge Keeling now makes that the State has submitted some portions of the trial record that were not before the court of appeals.

[36] The remaining question would be whether the evidence supports the proposition that Falk, in disarming Canfield, intended to promote or assist Martin's murder of her. Judge Keeling has not suggested that Falk's intent could not be inferred from the evidence. "Indeed, mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs." *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

Of course, the evidence might also support some other actions by Falk that a jury could find constituted encouragement, aid, or an attempt to aid. For this reason, the jury instructions do not single out specific evidence. Instead, the jury instructions simply ask the jury to determine whether the defendant did encourage, aid, or attempt to aid the other person. *See, e.g.*, Texas Criminal Pattern Jury Charges: Crimes Against Persons, § C4.4, at 67-70 (State Bar of Texas 2011).

assessment of the availability of a parties instruction under the evidence is a judicial determination or that we may not, on mandamus, resolve a dispute about the state of the evidence. The trial judge's task in a jury trial is not to determine whether the State is correct that the defendant is liable under the law of parties. Rather, the trial judge's task is simply to determine whether the evidence raises the issue. It is up to the jury to resolve conflicts in the evidence.

### 3. § 7.02(b)

Under § 7.02(b), a person is criminally responsible for the conduct of another if "in an attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators . . . if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."[37] The trial judge's proposed charge includes a § 7.02(b) instruction, but, in applying the law to the facts, it requires the State to show that Falk should have anticipated the specific method by which Canfield was killed. Whether that application of the law to the facts was properly included in the jury charge depends upon whether it would be part of an evidentiary-sufficiency review because, as we have discussed above, the jury charge must reflect what the State is required to prove.

Well-established evidentiary sufficiency principles demonstrate that the State is not required to prove that a defendant should have anticipated the specific method by which a person was killed in a capital-murder prosecution. We have explained that the method by which someone commits a murder is not relevant to evaluating the sufficiency of the evidence to support a conviction.[38] No

---

[37] TEX. PENAL CODE § 7.02(b).

[38] *Johnson v. State*, 364 S.W.3d 292, 296 (Tex. Crim. App. 2012).

statute prescribes the method by which death is caused in a capital murder,[39] and because capital murder, like murder, is a "result of conduct" offense,[40] the particular way in which a capital murder is accomplished does not even prescribe the allowable unit of prosecution.[41] And, if what is at issue is "a non-statutory allegation that has nothing to do with the allowable unit of prosecution," then the allegation "cannot be a basis for saying that the proved offense is different from the one that was pled."[42] Because the State is not bound to prove such an allegation, the allegation should not be a part of the jury charge, because, as we have explained above, the State is entitled to the broadest submission of its theories of liability that are authorized by the charging instrument and supported by the evidence.

We think that the court of appeals understood this, as it expressed its "strong opinion" in a reservation about its holding. Although no case specifically holds that the State need not prove that the defendant should have anticipated the particular method by which a murder was committed to show liability under § 7.02(b) in a capital-murder case, the combined weight of our precedents clearly establishes that proposition.

### D. Disposition

We conditionally grant mandamus relief and order the court of appeals to grant mandamus

---

[39] Statute does prescribe alternative culpable mental states and alternative sets of circumstances in which a murder might occur, s*ee* TEX. PENAL CODE § 19.02(b), and alternative aggravating factors for capital murder. *See id.*, § 19.03.

[40] *Louis v. State*, No. PD-0323-11, 2012 Tex. Crim. App. LEXIS 748, at 14 (Tex. Crim. App. June 6, 2012); *Roberts v. State*, 273 S.W.3d 322, 329 (Tex. Crim. App. 2008).

[41] *Johnson*, 364 S.W.3d at 295-96.

[42] *Id.* at 298.

relief directing Judge Keeling to submit the § 7.02(a)(2) theory of party liability in the jury charge and to submit the § 7.02(b) theory without requiring the State to show that Falk should have anticipated the particular method by which the murder was carried out. The writ of mandamus will issue only in the event that the court of appeals fails to comply with this opinion.[43] No motion for rehearing will be entertained.

Delivered: January 16, 2013
Publish

---

[43] We dismiss the State's petition for writ of prohibition.