**Affirmed and Opinion Filed December 29, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00857-CR

### CHAD ALLEN BROWN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1500082-R**

# MEMORANDUM OPINION

Before Justices Lang, Myers, and Evans
Opinion by Justice Lang

Following a plea of guilty, appellant Chad Allen Brown was convicted by a jury of manslaughter. Punishment was assessed by the jury at thirteen years' imprisonment. Appellant raises one issue. He asserts that the deadly weapon finding should be deleted from the judgment as unauthorized by the verdict.

We decide his sole issue against him. The trial court's judgment is affirmed. Because the law to be applied in this case is well settled, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2, 47.4.

### I. FACTUAL AND PROCEDURAL CONTEXT

Appellant was originally indicted for manslaughter with a deadly weapon. He entered a plea of guilty to the charge of manslaughter, but not true to the deadly weapon allegation. The jury

returned a verdict of guilty on the offense as charged in the indictment. The jury then assessed punishment at thirteen years' imprisonment. Also, the jury returned a special issue verdict affirmatively finding that appellant used a deadly weapon during the commission of the offense. The trial court sentenced appellant to thirteen years' imprisonment and entered an affirmative finding as to the deadly weapon.

Appellant joined the Marines in 2004 when he was seventeen years old. Upon returning from Iraq, appellant was diagnosed with bipolar disorder and post-traumatic stress disorder (PTSD). The evidence generally showed that on or about August 15, 2012 appellant joined his friend, the decedent, at the decedent's apartment. Appellant and the decedent were consuming alcohol. The evidence also revealed that appellant had taken Valium that day.

The following morning appellant called his mother and stated, "I have an Iraqi soldier in my home, but it's [sic] okay, I've taken care of the problem," and then hung up. His mother then called appellant back on the phone and appellant revealed to her that his friend, the decedent, had been murdered. Appellant's mother called the police.

Officer Thomas Long of the Mesquite Police Department was the first to respond. Appellant admitted to Officer Long that he had been fighting with the decedent and believed he had killed him. Officer Long recalled that appellant had blood all over his body. Appellant explained to Officer Long that he and the decedent would fight each other for fun, but that things "got out of control" that night. Also, appellant claimed the decedent had spoken "Iraqi" and had challenged appellant physically, such that appellant believed him to be an Iraqi insurgent. When he finally realized the decedent was not an Iraqi insurgent, but his friend, he tried to resuscitate him, to no avail. Appellant was arrested.

Officer Cody Eisenbarth of the California Highway Patrol, who had been a fellow Marine deployed with appellant, testified that his training in the Marines taught him to use his hands and

feet as deadly weapons. Further, he testified that, based on his training, he knew he could kill someone with his hands and feet.

Dr. Reade Quinton of the Dallas County Medical Examiner's Office performed the autopsy on the decedent. Dr. Quinton told the jury that the decedent's face and head had several contusions and lacerations due to blunt force trauma. Dr. Quinton's conclusion was that the cause of death was cranial cerebral trauma and the manner of death was homicide. Further, Dr. Quinton testified that an individual's use of hands and feet could cause the death of another.

On June 10, 2015, appellant pleaded guilty to the charged offense of manslaughter, but not true to the deadly weapon finding and requested that the deadly weapon issue be presented to a jury. Appellant did not object to the trial court's jury charge instructing the jury to find Appellant guilty of the underlying offense of manslaughter. As stated above, the jury returned a verdict finding Appellant guilty of the offense as charged in the indictment.

During the punishment phase the trial court presented a deadly weapon special issue verdict form to the jury. Appellant did not object to the trial court's jury charge. Again, the jury found that appellant had used or exhibited a deadly weapon during the commission of the charged offense and assessed punishment at thirteen years' imprisonment.

## II. DISCUSSION

In his sole issue, appellant complains that the deadly weapon finding should be deleted "as unauthorized by the verdict." Appellant argues that the trial court was unauthorized to make a deadly weapon finding because the special issue did not incorporate the indictment. Additionally, appellant argues that the inclusion of parole instructions tainted the jury charge.

### A. Error Preservation

To preserve a complaint for appellate review, a party must make a timely, specific objection in the trial court. TEX. R. APP. P. 52(a); *Mercado v. State*, 718 S.W.2d 291, 296 (Tex. Crim.

App. 1986). Failure to object waives error. *See Green v. State*, 682 S.W.2d 271, 275 (Tex. Crim. App. 1984), cert. denied, 470 U.S. 1034 (1985). "As a general rule, an appellant may not assert error pertaining to his sentence or punishment where he failed to object or otherwise raise such error in the trial court." *Borders v. State*, 822 S.W.2d 661, 666 (Tex. App.—Dallas 1991) (citing *Mercado*, 718 S.W.2d at 296; TEX. R. APP. P. 52(a)), *rev'd on other grounds*, 846 S.W.2d 834 (Tex. Crim. App. 1992) (per curiam).

### B. Applicable Law

"The entry of a deadly weapon in a judgment not only curtails a trial court's ability to order community supervision, it also affects a defendant's eligibility for parole." *Duran v. State*, 492 S.W.3d 741, 745 (Tex. Crim. App. 2016). "Section 508.145(d) of the Texas Government Code states that 'an inmate serving a sentence . . . for an offense for which the judgment contains an affirmative finding under Section 3g(a)(2) of [Article 42.12, Code of Criminal Procedure]' must serve a longer period, without consideration of good conduct time, before he may be released on parole." *Id*. at 745–46 (citing TEX. GOV'T. CODE ANN. § 508.145(d) (West 2010)). Because of these repercussions, there is well-settled case law holding that, "[f]or a trial court to enter a deadly-weapon finding in the judgment, the trier of fact must first make an 'affirmative finding' to that effect." *Id*. at 746 (citing TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3g (a)(2) (West 2010)).

A jury may make the required affirmative finding on the use or exhibition of a deadly weapon when they find the defendant used or exhibited a deadly weapon during the commission of a felony. TEX. CODE CRIM. PROC. ANN. art. 42.12 3g(a)(2) (West Supp. 2015). When the jury makes this affirmative finding the trial court must include this finding in the judgment entered. *Id*.

### *1. An Affirmative Finding*

An affirmative finding is an "express determination" by the jury that a deadly weapon was actually used or exhibited during the commission of the offense. *Polk v. State*, 693 S.W.2d 391, 393 (Tex. Crim. App. 1985). In *Polk*, the court of criminal appeals listed three formal ways a jury makes this affirmative finding:

> (1) the indictment specifically alleged a "deadly weapon" was used (using the words "deadly weapon") and the defendant was found guilty "as charged in the indictment;"
>
> (2) the indictment did not use the words "deadly weapon" but alleged use of a deadly weapon per se (such as a firearm); or
>
> (3) the jury made an express finding of fact of use of a deadly weapon in response to submission of a special issue during the punishment stage of trial.

*Duran*, 492 S.W.3d at 746 (citing *Polk v. State*, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985)). Thus, "*Polk* itself allows courts to make an inferential leap, albeit a tiny and completely logical one, to hold that the jury's verdict that a defendant is guilty 'as charged in the indictment' authorizes entry of a deadly-weapon finding." *Id*. "By way of contrast, no inferences are required when the trial court submits a question to the jury as a special issue in punishment: the trial court specifically asks the jury in the jury charge whether a deadly weapon was used or exhibited during the commission of the offense by the defendant or by a party to the offense, and the jury answers that question directly in a separate verdict form." *Id*. Outside of *Polk*'s three situations, a trial court may, in very limited circumstances, determine the jury made an affirmative deadly weapon finding through "deductive reasoning." *Id*. at 748 (citing *Crumpton v. State*, 301 S.W.3d 663, 665 (Tex. Crim. App. 2009)).

In *Duran*, the court of criminal appeals reaffirmed these requirements, addressing a situation in which the State indicted the appellant in that case for two separate offenses, of burglary of a habitation and aggravated assault. *Duran*, 492 S.W.3d at 743. In Count II for aggravated assault, the indictment alleged that appellant used or exhibited a deadly weapon in the process. *Id*. In

Count I for burglary of a habitation, however, there was no deadly weapon allegation. *Id*. In fact, "[n]either the indictment nor the jury charge contained language concerning the use of a deadly weapon in the burglary charge." *Id*. at 744. The jury found the appellant guilty on both counts. *Id*. However, before the punishment phase, the State abandoned the aggravated assault conviction. *Id*. The jury then assessed punishment solely for the burglary of a habitation conviction. *Id*.

The State later moved to have the trial court enter a deadly weapon finding for the burglary conviction. *Id*. "The State argued that the jury had necessarily made a finding that a deadly weapon was used in the commission of the crime by finding Appellant guilty of aggravated assault, even though the State had voluntarily abandoned that count after the jury returned the verdict." *Id*. The trial court agreed and entered the finding, and the court of appeals affirmed. *Id*. at 744–45. On appeal the appellant argued that the trial court "erred in modifying the judgment to include a deadly-weapon finding because the jury verdict on the burglary of a habitation allegation did not amount to an affirmative finding that Appellant had used or exhibited a deadly weapon during the offense." *Id*. at 745. The court of criminal appeals agreed with the appellant and reversed, because the scenario in that case did not fit within any of the scenarios listed in *Polk*. *Id*. at 748–49. Although the appellant "was found guilty 'as charged in the indictment,' the indictment for Count I [burglary of a habitation] did not allege the use of a deadly weapon" as Count II did. *Id*. at 748. Nor was the jury asked to "respond to a special issue submitted during punishment." *Id*. at 749. Thus, "[h]aving unequivocally abandoned the jury's verdict in the aggravated assault case without submitting a special issue instruction at punishment, the trial court had nothing upon which it could base the entry of a deadly-weapon finding." *Id*. at 750.

## 2. *Affirmative Findings Through Special Issue Verdicts*

If the State decides to ask the jury to make a deadly weapon finding by presenting a special issue to the jury, it may do so during the punishment phase, although the better practice is that the State present the special issue at the guilt-innocence phase of a trial. *Hill v. State*, 913 S.W.2d 581, 584 (Tex. Crim. App. 1996). Case law has suggested that a special issue verdict track the language of article 42.12, section 3(g)(a)(2), and find that the defendant "use[d] or exhibit[ed] a deadly weapon during the commission of the charged offense." *Hill v. State*, 913 S.W.2d 581, 584 (Tex. Crim. App. 1996).

When a defendant pleads guilty, however, the court of criminal appeals has concluded that this causes the trial to become a unitary proceeding, where there is but one phase, in which the jury should both assess punishment *and* make a deadly weapon determination. *In re State ex rel. Tharp*, 393 S.W.3d 751, 753, 757 (Tex. Crim. App. 2012). The guilt-innocence phase and the punishment phase are one. Accordingly, just as "[t]he State may be able to obtain a deadly-weapon finding from the jury at the guilt phase of trial[,] either through the wording of the offense submission in the jury charge or through a special issue" in a trial in which there are two phases, the State may do so in a unitary proceeding. *See In re State ex rel. Tharp*, 393 S.W.3d 751, 757 (Tex. Crim. App. 2012); *see Robertson v. State*, 245 S.W.3d 545, 548 (Tex. App.—Tyler 2007, pet. ref'd); *Hinojosa v. State*, No. 03–01–00663, 2002 WL 31026643, at *1 (Tex. App.—Austin Sept. 12, 2002, pet. ref'd) (mem. op., not designated for publication). The court of criminal appeals has even recognized that, in unitary proceedings, a defendant's "plea of guilty, being an acknowledgement of responsibility, could conceivably favorably impact the punishment determination." *In re State ex rel. Tharp*, 393 S.W.3d 751, 757 (Tex. Crim. App. 2012).

### *3. Inclusion of Parole Instructions in Jury Charge for Special Issue*

When a defendant pleads guilty before a jury in a unitary proceeding, courts of appeals have further recognized that the submission of parole instructions in one charge, for both assessment of punishment and a deadly weapon special issue, is proper. *Giraldo v. State*, No. 05–10–00180, 2012 WL 955356, at *2 (Tex. App.—Dallas Mar. 22, 2012, no pet.) (concluding that the trial court had no alternative but to submit the two [parole] instructions in one charge in the unitary proceeding); *see Guerrero v. State*, No. 01–96–00027, 1997 WL 466549, at *2 (Tex. App.—Houston [1st Dist.] Aug. 14, 1997, no pet.) (recognizing that when a defendant pleads guilty the trial court has no option but to submit the deadly weapon issue in the jury charge at the punishment hearing along with two parole instructions). Nor does the inclusion of parole instructions in the jury charge corrupt the verdict. *Giraldo*, 2012 WL 955356, at *2 ("Moreover, we cannot agree the [parole] instructions constituted a 'comment on the weight of the evidence.'").

### *C. Application of Law to the Facts*

Appellant failed to object to the trial court's special issue jury charge, which included parole instructions, that was submitted to the jury at trial. Appellant also failed to object at trial to the jury's special issue verdict, which did not incorporate the indictment, but merely referred to "the offense." Finally, appellant failed to object to the trial court's entry of the deadly weapon finding and instead responded to the trial court that there was "[n]o legal reason" the sentence should not be pronounced. Because appellant failed to object at trial, appellant has failed to preserve error for appellate review and his sole point of error is waived. *Mercado*, 718 S.W.2d at 296; *see Spurgeon v. State*, No. 05–98–00321–CR, 2001 WL 312238, at *4 (Tex. App.—Dallas Apr. 2, 2001, no pet.) (not designated for publication).

Even assuming appellant did not waive his point of error, the trial court was authorized to make the deadly weapon finding. The indictment against Appellant read:

> IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS: The Grand Jury of Dallas County, State of Texas, duly organized at the January Term, A.D., 2015 of the 195th Judicial District Court, Dallas County, in said Court at said Term, do present that one **BROWN, CHAD ALLEN**, Defendant,
>
> On or about the 16th day of August A.D., 2012 in the County of Dallas and said State, did then and there recklessly cause the death of an individual, Carlos Garcia, hereinafter called deceased, by STRIKING and BY BEATING DECEASED WITH DEFENDANT'S *HANDS AND FEET, deadly weapons*,
>
> *And it is further presented in and to said Court that a deadly weapon, to-wit: DEFENDANT's HANDS AND FEET, were used and exhibited during the commission of the aforesaid offense,*
>
> against the peace and dignity of the State.

(Emphasis added). Appellant entered a plea of guilty to this indictment, which included a deadly weapon allegation. The jury was instructed to find the appellant guilty beyond a reasonable doubt. The jury did in fact find appellant guilty "as charged in the indictment." There was no objection to the plea or the submission. This scenario falls within the first category of *Polk* in which the indictment alleges a deadly weapon was used and the jury finds the appellant guilty "as charged in the indictment."

Nevertheless the State submitted a special issue on whether appellant had used or exhibited a deadly weapon to the jury and the jury returned a finding of true. The special issue form presented to the jury in the jury charge read:

> It is further alleged in the indictment that the defendant used or exhibited a deadly weapon to-wit: the defendant's hands or feet during the commission of the offense.
> "Deadly weapon" means a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.
> "Bodily injury" means physical pain, illness, or any impairment of physical condition.
> "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

Therefore if you find from the evidence beyond a reasonable doubt that the defendant used or exhibited a deadly weapon, to-wit: the defendant's hands or feet during the commission of the offense, then you shall make an affirmative finding of a deadly weapon and so state in your verdict.

If you do not so find beyond a reasonable doubt, or you have a reasonable doubt that the defendant used or exhibited a deadly weapon during the commission of the offense, then you shall make a negative finding on the issue of a deadly weapon and so state in your verdict.

The jury's special issue verdict read: "We, the Jury, unanimously find beyond a reasonable doubt that the Defendant, Chad Allen Brown, used or exhibited a deadly weapon during the commission of the offense."

Appellant contends that, because the special issue verdict "did not refer to the allegations of the indictment" or "incorporate the indictment," it is "ambiguous" and thus, the trial court was not authorized to enter a deadly weapon finding. We disagree.

The special issue jury charge did refer to the indictment, but the special issue verdict did not. However, appellant cites no case law, and we can find none, requiring that a deadly weapon special issue verdict refer to the indictment to constitute an affirmative finding. Additionally, appellant cites no case law, and we can find none, stating that failure to incorporate the indictment in a deadly weapon special issue verdict renders the verdict ambiguous.

In fact we conclude the opposite. In *Hill*, albeit in the context of a bifurcated trial, the appellants argued that the failure of the deadly weapon special issue verdict to include the phrase "during the commission of the *charged* offense" rendered the special issue verdict fatally defective. *Hill*, 913 S.W.2d at 584 (emphasis added). Specifically, appellants argued that the Texas Code of Criminal Procedure required the special issue verdict to reference the indictment in this way. *Id*. The court of criminal appeals rejected this argument stating that, "*Polk* does not . . . support appellants' assertion that omission of the phrase 'during commission of the charged offense' means 'the jury's affirmative answer to the special issue in the present case has no legal effect whatsoever.'" *Id*.

–10–

Appellant relies on *Duran v. State* for the proposition that the special issue verdict in this case was ambiguous. We disagree the special issue verdict was ambiguous. In *Duran* the indictment, for the offense for which the defendant in that case was convicted, contained no deadly weapon allegation. *Duran*, 492 S.W.3d at 748. In this case, the indictment for the offense of manslaughter for which appellant was convicted did contain a deadly weapon allegation. Further, in *Duran* there was no deadly weapon special issue submitted to the jury. *Id*. at 749. In this case there was a deadly weapon special issue submitted to the jury.

The court of criminal appeals emphasized in *Duran* that "no inferences are required" when the trial court "specifically asks the jury in the jury charge whether a deadly weapon was used or exhibited during the commission of the offense . . . and the jury answers that question directly in a separate verdict form." *Id*. at 746.

A special issue verdict need not incorporate the indictment because it is an explicit question to the jury, to which the jury responds. Failure of a special issue to incorporate the indictment does not render the finding on the special issue ambiguous. In this case, the proceeding was a unitary one, on the single offense of manslaughter. Therefore there was no confusion as to what "offense" the special issue verdict was referring to when it stated that the appellant "used or exhibited a deadly weapon during the commission of the offense" because it clearly referred to the sole offense at issue in this case: manslaughter.

Contrary to appellant's argument, the trial court did not resort to "deductive reasoning" because it did not need to do so. This case falls within not one, but two, of the categories listed in *Polk* which authorize a trial court to enter a deadly weapon finding, without any deductive reasoning needed. We conclude that this deadly weapon finding constitutes a proper affirmative finding under the reasoning of *Polk*.

–11–

Finally, appellant argues that, "[e]ven if the special issue verdict could authorize a deadly weapon finding without incorporating the indictment" and was not ambiguous, the special issue verdict "was corrupted by the unauthorized [parole] instructions" which were included in the jury charge. We disagree.

We first note that appellant failed to preserve error for appellate review by failing to object to the jury charge containing the parole instructions. As such, his argument is waived. *See Mercado*, 718 S.W.2d at 296; *cf. Guerrero*, 1997 WL 466549, at *1 (Appellant objected to State's dual submission of parole instructions and the court of appeals addressed issue on appeal). However, even had error been preserved for our review, the trial court properly submitted two parole instructions: one applicable if the jury were to make an affirmative deadly weapon finding and another applicable if the jury were to not make that finding. As we concluded in *Giraldo*, the trial court "had no alternative but to submit the two instructions in one charge in the unitary proceeding." *Giraldo v. State*, No. 05–10–00180, 2012 WL 955356, at *2 (Tex. App.—Dallas Mar. 22, 2012, no pet.).

## III. CONCLUSION

Appellant's sole issue is decided against him. We affirm the trial court's judgment.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2
150857F.U05

–12–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

CHAD ALLEN BROWN, Appellant

No. 05-15-00857-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1500082-R.
Opinion delivered by Justice Lang. Justices Myers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 29th day of December, 2016.