

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. AP-76,519 & 76,520

### CHARLES KEVIN BOWEN
### AND JENNIFER BOWEN, Relators

### v.

### HONORABLE BURT CARNES, 368TH JUDICIAL
### DISTRICT COURT OF WILLIAMSON COUNTY, Respondent

### ON PETITION FOR A WRIT OF MANDAMUS
### IN CAUSE NOS. 09-649-K368 & 09-650-K368 IN THE
### 368TH DISTRICT COURT OF WILLIAMSON COUNTY

**PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HERVEY, COCHRAN and ALCALA, JJ., joined. MEYERS, J., not participating.**

# O P I N I O N

We are called upon in this original mandamus proceeding to determine whether the

respondent, the trial court judge in the relators' pending capital murder prosecution, must

rescind an order granting the State's motion to disqualify the relators' mutually retained

counsel of choice, Robert Phillips. A principal witness in the State's case, a jailhouse informant by the name of William Ballenger, was a former client of Phillips in an unrelated criminal matter. The State moved to disqualify Phillips from representing the relators in their capital trial on the grounds that Phillips might be hampered in his ability to effectively cross-examine his former client. Even though both the relators and Ballenger had executed waivers of their rights to conflict-free counsel, the respondent nevertheless granted the State's motion out of concern for "the integrity of the judicial process and the public's perception[.]" We filed and set the relators' application in order to determine whether, under the particular circumstances presented by this case, the respondent abused his discretion to deprive the relators of their Sixth Amendment right to counsel of choice on the sole basis of his concern with the public's perception of fairness. We will grant relief.

## FACTS AND PROCEDURAL POSTURE

The agreed facts are as follows. The relators, Kevin and Jennifer Bowen, were charged by separate indictments with the capital murder of John Blattner, Jennifer's ex-husband, alleged to have occurred in March of 2009. They both retained Phillips to represent them in these charges.[1] In February of 2010, Ballenger gave a statement to police in which

---

[1] The State's motion to disqualify Phillips also sought to disqualify him from *mutually* representing Kevin and Jennifer, but the respondent did not grant the motion on that basis, having already declared in September of 2009 that he found Kevin's and Jennifer's waivers of the right to conflict-free counsel valid and acceptable to him in this regard. Whether Phillips should be permitted to represent both Kevin and Jennifer (without regard to his representation of Ballenger), therefore, is not a question that is presently before us—only the question of whether he may be prohibited from representing either relator on account of his prior representation of Ballenger.

he detailed what he asserts Kevin told him with respect to this offense while both were incarcerated in the Williamson County Jail. Ballenger had also retained Phillips to defend him against unrelated charges of capital murder, murder, and aggravated assault. As of February 18, 2010, when the State first revealed Ballenger's statement to Phillips, Ballenger had already entered a negotiated guilty plea to murder, but his sentencing had not yet taken place. In April of 2010, the State filed its motion to disqualify Phillips from representing the relators. The State claimed, *inter alia*, that in the very likely event that the State should call Ballenger to testify against the relators, Phillips would be put in the compromising position of either having to vigorously attack Ballenger's credibility on cross-examination, in the interest of the relators, or to refrain from doing so, which would be in Ballenger's best interest but detrimental to the best interest of the relators.

The respondent took up the State's motion to disqualify Phillips at a hearing on May 5, 2010. In the course of the hearing, Phillips introduced into the record signed written waivers from both of the relators documenting their informed consent to their continued representation by Phillips despite any conflict, as well as their waiver of any objection to his continued representation of Ballenger. Phillips also requested permission to confer with the respondent *ex parte* so that he might explain to the trial court, in a setting that would not unduly reveal his trial strategy to the State, how he believed he could continue to represent both the Bowens and Ballenger without an actual conflict of interest. The trial court declined to permit such an *ex parte* conference, but allowed Phillips to submit a sealed affidavit, for

the respondent's perusal only, to thus explain himself. Phillips was briefly excused from the hearing to execute such an affidavit, which the trial court then read to himself on the bench, sealed, and admitted for record purposes.

As the May 5th hearing unfolded, the respondent made several remarks that seem to indicate the bent of his thinking. Early on, the respondent announced:

> THE COURT: In the interest of time, my mind has not changed about the potential or the real conflict between the Bowens and their ability to waive [any conflict that might stem from Phillips's mutual representation of the two of them] as long as it's done knowingly, intelligently, and voluntarily. I've heard that and ruled on it.
>
> The reason we're here today having this hearing is because of the disclosure from Mr. Ballenger. To me that is the issue. And it's not just whether they all agree. It's how it would appear to the public at large. I mean it's just kind of an incredible situation.
>
> MR. PHILLIPS: I understand, Judge.
>
> THE COURT: You, I think, said it. It's really about the integrity of the judicial process and the public's perception of the judicial process and what it would look like to go to a trial on a capital murder case where the same attorney representing both defendants is also representing one of the prosecution witnesses. That is what should be the focus of today's hearing.

Later, the respondent similarly observed:

> THE COURT: . . . What you said earlier–it's not even about these three people and what they feel and what they think and even what they want at this point. It's the integrity of the system as it appears to everybody else. And what is it going to look like in a capital murder trial with codefendants having you represent not just the two defendants but a witness that comes in who is also a murder case who's testifying against your clients, and you're going to have to cross-examine?

Assured by Phillips that his concerns about public perception would be obviated if he would

only hear Phillips out in an *ex parte* conference, the respondent answered:

> THE COURT: . . . [P]art of the problem is I'm looking down the road beyond the trial to an appeal, assuming there is a guilty verdict, and then ultimately a writ of habeas corpus. And I can imagine what some good appeal lawyer will do given this situation. I can just see it in my mind. It would be 50 pages about how we ignored the law and truth and justice in Williamson County once again. I'm frankly getting tired of hearing that.

Phillips insisted that "I can answer your question. I just can't do it in open court." He continued:

> MR. PHILLIPS: . . . I can tell you why it will, I believe, if not satisfy you at least respond to your question about why the Ballenger factor should not disqualify me from either Bowen case or even Ballenger. But I can't do it here without serving up my defense to the State in open court.
>
> THE COURT: It still doesn't answer my question –
>
> MR. PHILLIPS: It will.
>
> THE COURT: – about the appearance.
>
> MR. PHILLIPS: It will.
>
> THE COURT: It will not. It will not.
>
> I know how these things play out. I'm telling you I can see some reporter that doesn't understand diddly about what's going on in the trial but, you know, can pick up an issue like this and make a story out of it. But even more important than that, because that doesn't really matter that much, it's what happens in the appeals and in the writs down the road.

After reluctantly accepting Phillips's explanatory affidavit, the respondent reviewed it and admitted it into evidence for record purposes. Nevertheless, the respondent persisted in his view that "the appearance of impropriety" inherent in Phillips's continued representation of

both the relators and Ballenger was intolerable. He ruled:

> THE COURT: . . . [A]fter more than 20 years on the bench I've had this issue brought before me in criminal cases, more often, frankly, in civil cases. And I've never granted one. I've always thought . . . that most times it was a simple ethical issue and not a disqualification issue. And, as I've already stated, I had already made this ruling once on the Bowens and any potential conflict between them, and I had already determined that I thought they were waiving any conflicts knowingly, intelligently, and voluntarily.
>
> The difference now is having a third party as a witness in the case represented by the same counsel. And, you know, we talk a lot about the appearance of impropriety. If there ever is one, this is it. I'm going to grant the motion to disqualify as to both of the Bowens and deny it as to Mr. Ballenger because . . . his deal is already cut, and I just don't see that as a real issue in the Ballenger case.

Upon the suggestion that the respondent should disqualify Phillips in representing Ballenger but permit him to continue representing the relators, the respondent replied:

> THE COURT: And to be frank, surely you . . . realize that I did think of that as an alternative. I don't think it takes care of the issue as I see it. If I'm wrong, I'm wrong, but I have thought of that and considered it.

Asked at this juncture whether he would consider allowing Phillips to continue to represent at least *one* of the relators, the respondent answered:

> THE COURT: That doesn't address my issue at all. My issue isn't between the Bowens. I've already addressed that issue. I was perfectly comfortable and satisfied with my decision when it was just the Bowens and the possible conflict. It's this other issue that is my concern.

With this final remark, the hearing came to a close.

The relators filed an original application for writ of mandamus in the Third Court of

Appeals.[2]  In a one sentence order, that court denied relief without elaboration (perhaps out of deference to the confidential nature of Phillips's sealed affidavit).[3]  We filed and set the relators' subsequent original application for writ of mandamus to this Court and held oral argument.  At oral argument, we were informed that Ballenger has now been sentenced.  Because his case is effectively concluded, Phillips no longer represents him.  The case presently before us therefore involves only the question of whether Ballenger's status as Phillips's former client in an unrelated case justifies the respondent's order disqualifying Phillips from further representation of the relators, given Ballenger's status as a potentially important witness at the relators' pending capital murder trial.

## MANDAMUS STANDARD

We have described the standard that governs mandamus relief in criminal law matters in *State ex rel. Young v. Sixth Judicial District Court of Appeals*:[4]

> The traditional test for determining whether mandamus relief is appropriate requires the relator to establish two things.  First, he must show that he has no adequate remedy at law to redress his alleged harm.  Second, he must show that what he seeks to compel is a ministerial act, not involving a discretionary or judicial decision.  If the relator fails to satisfy either aspect of this two-part

---

[2] *See Padilla v. McDaniel*, 122 S.W.3d 805, 808 (Tex. Crim. App. 2003) ("when a court of appeals and this court have concurrent, original jurisdiction of a petition for a writ of mandamus against the judge of a district or county court, the petition should be presented first to the court of appeals unless there is a compelling reason not to do so.").

[3] *In re Bowen*, 2010 WL 2977486, No. 03-10-00316-CV (Tex. App.—Austin, delivered July 28, 2010) (not designated for publication).

[4] 236 S.W.3d 207 (Tex. Crim. App. 2007).

test, then relief should be denied. As to the latter requirement, we have said that it is satisfied if the relator can show he has a *clear* right to the relief sought–that is to say, when the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles.[5]

We will measure the relators' present claim against this standard.[6]

## ANALYSIS

### The Sixth Amendment Right to Counsel of Choice

*Wheat v. United States,*[7] the parties agree, is the controlling authority on the Sixth Amendment right to retained counsel of choice. In *Wheat*, the defendant requested the substitution of newly retained counsel, one Iredale, just "two court days" before his trial was set to commence.[8] Iredale also represented two other defendants, Gomez-Barajas and Bravo, who were charged as participants in the same "far-flung drug distribution conspiracy" as

---

[5] *Id*. at 210 (internal citations, footnotes, and quotation marks omitted).

[6] The State, as the real party in interest in this matter, argues that it is the court of appeals's denial of mandamus relief that we should be reviewing rather than the respondent's ruling directly, citing *State ex rel. Young v. Sixth Judicial District Court of Appeals*, *supra*, at 210-11, for that proposition. State's Supplemental Response, at 5-6. Because the court of appeals issued only a one-sentence order, we do not know on what basis it denied relief. In any event, in practice it makes little difference whether we purport to review the court of appeals's mandamus ruling or the trial court's order of disqualification. Either way, we review the appropriateness of the trial court's conduct. As we pointed out in *Young*, "we determine whether the court of appeals abused its discretion essentially by undertaking a 'de novo application of the two pronged test'" for mandamus relief. 236 S.W.3d at 210-11 (citing George E. Dix & Robert O. Dawson, 43B TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 46.85 (2d ed. 2001), at 190).

[7] 486 U.S. 153 (1988).

[8] *Id*. at 155, 157.

Wheat.[9]  Gomez-Barajas had been previously acquitted of certain charges; to avoid others, he had agreed to plead guilty to two other offenses, but the trial court had not yet accepted his plea.[10]  Bravo had pled guilty to a charge of drug transportation, and the Government regarded him as a likely witness at Wheat's trial, "necessitating vigorous cross-examination of Bravo by [Iredale]."[11]  Moreover, if Gomez-Barajas's guilty plea were to fall through, Wheat would likely be called to testify at any ensuing trial, which "would create an ethical dilemma for Iredale from which one or the other of his clients would likely suffer."[12]  The Government objected to Iredale's proposed substitution as Wheat's counsel based on an actual conflict of interest.[13]  Wheat argued that, because he had obtained waivers of any conflict from all three of Iredale's clients, to deny him Iredale's services would deprive him of his Sixth Amendment right to retained counsel of his choice.[14]  The Supreme Court granted review to decide under what circumstances a trial court is permitted to reject a defendant's waiver of his Sixth Amendment right to the effective assistance of counsel,

---

[9] *Id*. at 154-55.

[10] *Id*.

[11] *Id*. at 155, 164.

[12] *Id*. at 164.

[13] *Id*. at 155-56.

[14] *Id*. at 156-57.

forcing him to go to trial with counsel who is guaranteed to be conflict-free in derogation of his concomitant Sixth Amendment right to retained counsel of choice.[15]

The Supreme Court began its analysis by recognizing that "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment[.]"[16] On the other hand, the Court emphasized, this right may be "circumscribed" by other Sixth Amendment considerations whose "essential aim . . . is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."[17] Thus, the particular question presented in *Wheat* was to what extent the Sixth Amendment right to retained counsel of choice may be "qualified by the fact that the attorney has represented other defendants charged in the same criminal conspiracy."[18]

To Wheat's argument for a categorical rule that all other Sixth Amendment interests should fall away in light of a waiver of the right to conflict-free counsel, the Supreme Court

---

[15]

*Id*. at 158.

[16]

*Id*. at 159. Indeed, this facet of Sixth Amendment protection "commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be the best." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006).

[17]

*Wheat v. United States*, *supra*, at 159. *See also Gonzalez v. State*, 117 S.W.3d 831, 837 (Tex. Crim. App. 2003) ("The right to assistance of counsel contemplates the defendant's right to obtain assistance from counsel of the defendant's choosing. However, the defendant's right to counsel of choice is not absolute.").

[18]

*Wheat v. United States*, *supra*, at 159.

responded:

> [N]o such flat rule can be deduced from the Sixth Amendment presumption in favor of counsel of choice. Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. * * * Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation.[19]

For these reasons, the Supreme Court reasoned, when there is an *actual* conflict of interest, "there can be no doubt that [a trial court] may decline a proffer of waiver, and insist that defendants be separately represented."[20] Because in the context of a pretrial motion to disqualify counsel of choice, the likelihood of an *actual* conflict of interest may be difficult to assess, the Supreme Court went further, observing that:

> we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.[21]

The Supreme Court ultimately held that the trial court in *Wheat* did not abuse its discretion in rejecting the waiver of conflict-free counsel and denying the substitution of counsel, concluding that trial courts in the pretrial context:

---

[19] *Id*. at 160.

[20] *Id*. at 162.

[21] *Id*. at 163.

must recognize a presumption in favor of [a defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.[22]

In deference to *Wheat*'s presumption in favor of counsel of choice, this Court has recognized that:

when a trial court unreasonably or arbitrarily interferes with the defendant's right to choose counsel, its actions rise to the level of a constitutional violation. Therefore, courts must exercise caution in disqualifying defense attorneys, especially if less serious means would adequately protect the government's interests.[23]

For reasons we explain below, we hold that the respondent clearly erred to interfere with the relators' Sixth Amendment right to retain counsel of their choosing.

### Adequate Remedy at Law?

In *Stearnes v. Clinton*,[24] a mandamus case involving the arbitrary disqualification of appointed counsel rather than retained counsel of choice, this Court held that the regular appellate process "does not provide an adequate remedy even if it results in a reversal and

---

[22] *Id.* at 164.

[23] *Gonzalez v. State*, *supra*, at 837. *Cf. Stearnes v. Clinton*, *supra* (trial court lacked authority to remove appointed counsel "arbitrarily" and could be compelled by mandamus to rescind order purporting to do so); *Buntion v. Harmon*, 827 S.W.2d 945, 949 (Tex. Crim. App. 1992) ("we cannot agree that a trial judge's discretion to replace appointed trial counsel over the objection of both counsel and the defendant extends to situations where the only justification for such replacement is the trial judge's personal 'feelings' or 'preferences.'"); *Stotts v. Wisser*, 894 S.W.2d 366, 367 (Tex. Crim. App. 1995) (same).

[24] 780 S.W.2d 216 (Tex. Crim. App. 1989).

new trial."[25]  What was true in the context of arbitrarily removed appointed counsel pertains

*a fortiori* for the right to retained counsel of choice.  In the former context, we observed:

> Having appointed counsel, a criminal defendant should not have to be subjected to a trial and appeal process without the appointed counsel he had grown to accept and gain confidence in.  The utilization of the appellate process in this situation to correct this particular ill would be too burdensome and would only aggravate the harm and most likely would result in a new trial compelling relator to again endure a trip through the system, creating in turn needless additional cost to the taxpayers of this state.[26]

Likewise, relief in the form of a new trial does not adequately vindicate the Sixth

Amendment right at issue when retained counsel is unconstitutionally disqualified.  After all,

the right to retained counsel of choice "commands, not that a trial be fair, but that a particular

guarantee of fairness be provided—to wit, that the accused be defended by the counsel he

believes to be best."[27]  Requiring an accused to go through the ordeal of trial and appeal

before he can pursue his remedy on appeal is a waste of public resources that can serve only

to compel him unduly to reveal his evidence and trial strategy to the State.  We do not

hesitate to conclude that the relators have satisfied the first prerequisite for mandamus relief.

---

[25]  *Id*. at 225.  *See also Buntion v. Harmon*, *supra*, at 948 (same);  *Stotts v. Wisser*, *supra*, at 367 (same).

[26]  *Stearnes v. Clinton*, *supra*, at 225.

[27]  *United States v. Gonzalez-Lopez*, *supra*, at 146.

**Clear Right to Relief?**

The State, as real party in interest,[28] argues that the record reveals at least a serious

*potential* for conflict in that Phillips will be expected to cross-examine his former client,

Ballenger—a situation ordinarily rife with potential for divided loyalties and breach of

confidentiality. Phillips, argues the State, "would likely be influenced by privileged

information he has learned about Ballenger in the course of representing him."[29] "At the very

least," the State continues, "he would be forced to attack Ballenger's credibility as a

'jailhouse snitch[.]'"[30]

Rule 1.06(b)(2) of the Texas Disciplinary Rules of Professional Conduct prohibits an

attorney (in this case, Phillips) from representing a client (the relators) if that representation

reasonably appears to be limited by the attorney's responsibilities to a third party

---

[28] Prior to filing and setting this cause, on October 10, 2010, we ordered the respondent to file a response within thirty days. In a letter to the Court dated February 8, 2011, the respondent responded, as follows:

> My response is that I listened carefully to both sides, studied the law that was presented by the attorneys and, after due consideration, made my decision. I believe my decision was correct but, of course, I will abide by the decision of the Court of Criminal Appeals.

Otherwise, the respondent simply adopted the response of the State as the real party in interest.

[29] State's Supplemental Response, at 10.

[30] *Id*.

(Ballenger).[31] But under Rule 1.06(c), an attorney may represent the client if the attorney reasonably believes the representation will not be materially affected by the adverse limitation caused by his responsibility to the third person and the client consents after full disclosure.[32] The relators have consented to representation by Phillips despite whatever limitations his prior representation of Ballenger may impose, and there is no issue with regard to the validity of their waivers of the right to conflict-free counsel. It is therefore not surprising that, judging by the respondent's comments on the record, he was not primarily concerned about Phillips's fealty toward the relators. He expressed far more solicitude for Phillips's duties with respect to his former client, Ballenger.

Those duties to a former client are set out in Rules 109 and 105 of the Texas Disciplinary Rules of Professional Conduct.[33] Under Rule 109(a), an attorney may not,

---

[31]

See TEX. DISCIPLINARY RULES PROF'L CONDUCT Rule 1.06(b)(2) ("a lawyer shall not represent a person if the representation of that person . . . reasonably appears to be or become adversely limited by the lawyer's . . . responsibilities to another client or to a third person"). Because Ballenger is not currently Phillips's client, it cannot be said, strictly speaking, that Phillips could be "adversely limited" in his representation of the relators by virtue of his responsibilities to Ballenger as "another client" under this provision.

[32]

See TEX. DISCIPLINARY RULES PROF'L CONDUCT Rule 1.06(c) ("A lawyer may represent a client in the circumstances described in (b) if . . . the lawyer reasonably believes the representation of each client will not be materially affected; and . . . each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any.").

[33]

See TEX. DISCIPLINARY RULES PROF'L CONDUCT Rules 1.09(a)(2) & (3) ("Without prior consent, a lawyer who personally represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client . . . if the representations in reasonable probability will involve a violation of Rule 1.05; or . . . if it is the same or a substantially related

without prior consent of a former client, represent a new client in a matter adverse to the former client if representation of the new client will, in reasonable probability, involve a violation Rule 1.05's prohibition against disclosure of confidential information obtained from the former client, or if the matter in which he represents the new client is the same or substantially related to the matter in which he represented the former client. It is clear that Phillips did not represent Ballenger with respect to the same or a substantially related matter as that in which he now represents the relators. Any continuing duty that Phillips owes Ballenger by virtue of the prior representation, allegedly forming the basis for a worrisome conflict of interest, can only stem from Rule 105's prohibition against the use of confidential information to attack Ballenger's credibility as a witness for the State.

On the facts presented here, however, the potential for such a conflict is not serious. During oral argument before this Court, counsel for the relators revealed that Ballenger "is not regarded to us as a hostile witness." Without disclosing any of the substance or details of Phillips's sealed affidavit, we simply observe that it generally lays out a defensive strategy for representing the relators that is consistent with the relators' assertion during oral argument. That the defense regards Ballenger as a friendly rather than a hostile witness would seem to lessen the need for vigorous, adverse cross-examination of Ballenger. Such a defensive strategy effectively eliminates any potential that Phillips's loyalty to Ballenger

matter."). *See also id*. Rule 1.05(b)(3) (generally providing that "a lawyer shall not knowingly . . . [u]se confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known.").

as a former client would be compromised.

We note, however, that Phillips's affidavit does *not* expressly address the question whether his proposed defensive strategy would necessarily avoid any reliance on his part on confidential information that he may have obtained from Ballenger during the course of that now-completed representation. Moreover, while Ballenger has also executed a waiver of any objection to Phillips's representation of both himself and the relators, his waiver likewise fails to address the question of the possible disclosure of confidential information. Nevertheless, because the offense to which Ballenger pled guilty is entirely unrelated to the charges against the relators (unlike the scenario in *Wheat*, in which all of Iredale's co-defendant-clients were charged with related crimes), the likelihood is exceedingly remote that Phillips would face the dilemma of having to decide whether to reveal confidential information stemming from his representation of Ballenger in order to adequately defend the relators' interests.[34] Obviously Ballenger himself regards the likelihood as remote, since he has waived any complaint to Phillips's continued representation of the relators. Under these particular circumstances—Phillips's representation of Ballenger is complete, it involved an offense that had nothing to do with the charges against the relators, and Ballenger himself has waived any objection to Phillips's continued representation of the relators—we are

---

[34] *See* Wayne R. LeFave et al., 3 CRIMINAL PROCEDURE § 11.9(c) (3rd ed. 2007), at 900 n.115 & cases cited ("Disqualification may also be imposed where the prior representation of the witness was in a matter unrelated to the current charges against the defendant, but only on a showing that counsel's potential impeachment of the witness would have to be limited to avoid disclosure of confidential information acquired in the prior representation.").

satisfied that the record reveals no actual or serious potential for conflict of interest inherent in Phillips cross-examining his former client.[35]

Indeed, the respondent has not found otherwise.  It is apparent to us from the record excerpts above that the respondent focused, not on the existence of an actual or serious potential for conflict, but almost exclusively on whether the public might perceive there to be such a conflict.  The respondent persistently worried aloud about the *appearance* of impropriety.  Even after finally permitting the relators to make their *ex parte* case for the absence of any true conflict, the respondent once again invoked public perception as justification for the disqualification, never making any record finding that an actual conflict, or even a serious potential for one, existed.

This is not to suggest that the respondent's concerns about public perception of fairness are trivial or irrelevant; indeed, as we have already noted, the Supreme Court in

---

[35] This view is consistent with that taken by other courts confronted with issues of attorney disqualification arising from defense counsel's prior representation of a prosecution witness. *See People v. Frisco*, 119 P.3d 1093, 1095 (Colo. 2005) (observing that "when the court's concern is protecting the interests of former clients rather than protecting the defendant, . . . a defendant's choice of counsel will not be lightly denied[,]" and holding that trial court abused its discretion to disqualify counsel on a record lacking substantial evidence that, in representing defendant, trial counsel would have to reveal confidential information obtained from former client); *Daniels v. State*, 17 P.3d 75, 84 (Alaska App. 2001) (observing that "a court should rarely disqualify an attorney based on a former attorney-client relationship if the former client does not seek the attorney's disqualification[,]" and holding that trial court abused its discretion to disqualify appointed counsel where no confidential information likely to be revealed and "[n]o one whose interests are at stake" asserted a conflict). *See also State ex rel. Blake v. Hatcher*, 218 W.Va. 407, 417, 624 S.E.2d 844, 854 (2005) (holding "that where the State moves for disqualification of a criminal defendant's counsel of choice due to counsel's former representation of a State witness, the State bears a heavy burden of proving disqualification is necessary and justified[,]" *i.e.*, that an actual conflict or serious potential for conflict exists, and remanding for hearing).

*Wheat* observed during the course of its analysis that trial courts "have an independent interest in ensuring . . . that legal proceedings appear fair to all who observe them."[36] But the Supreme Court's ultimate holding was that "the presumption in favor of . . . counsel of choice" is overcome only by "an actual conflict or a serious potential for conflict."[37] Clearly, before the mere appearance of unfairness may be allowed to defeat the Sixth Amendment presumption in favor of retained counsel, it must be accompanied *at least* by some serious potential for conflict. Here, the respondent allowed his concern about the public's perception of fairness, without more, to override the relators' own perception that the best way they could assure fairness for themselves was to be "defended by the counsel [they] believe[d] to be best."[38] Such a concern, untethered to a finding of an actual or serious potential for conflict of interest, cannot suffice to overcome the *Wheat* presumption. Nor does it pay sufficient heed to our admonition in *Gonzalez v. State* that "courts must exercise caution in disqualifying defense attorneys, especially if less serious means would adequately protect the government's interests."[39] We hold that disqualification of retained counsel under these circumstances is an abuse of disecretion, and that mandamus relief will lie to remedy the

---

[36] *Wheat v. United States*, *supra*, at 160.

[37] *Id*. at 164.

[38] *United States v. Gonzalez-Lopez*, *supra*, at 146.

[39] *Gonzalez v. State*, *supra*, at 837.

situation.[40]

## CONCLUSION

Accordingly, the relators are entitled to a writ of mandamus directing the respondent to rescind his order disqualifying Phillips from representing them in their capital murder trial. However, as is customary, we will withhold issuance of the writ at this time to allow the respondent the opportunity to conform his actions to this opinion. Only in the event that the respondent should not rescind his order will the writ of mandamus issue.

DELIVERED:     June 15, 2011
PUBLISH

---

[40]

*Stearnes v. Clinton*, *supra*, at 223; *Buntion v. Harmon*, *supra*, at 949; *Stotts v. Wisser*, *supra*, at 367.