

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. WR-82,265-01 & WR-82,265-02

### IN RE TYRONE ALLEN, Relator

### ON PETITIONS FOR WRIT OF MANDAMUS
### TO THE FIFTH COURT OF APPEALS
### CAUSE NOS. 05-14-01167-CV AND 05-14-01168-CV
### DALLAS COUNTY

KEASLER, J., delivered the opinion of the Court in which MEYERS, HERVEY, RICHARDSON, and YEARY, JJ., joined. MEYERS, J., filed a concurring opinion. YEARY, J., filed a concurring opinion. ALCALA, J., filed a dissenting opinion. NEWELL, J., filed a dissenting opinion in which KELLER, P.J., and ALCALA, J., joined. JOHNSON, J., concurred.

### O P I N I O N

In two capital-murder cases, Tyrone Allen sought a pretrial hearing requesting the trial judge determine whether he was intellectually disabled and therefore exempt from the death penalty if convicted. Over the State's objection, the judge granted the motions for a pretrial hearing. The court of appeals granted the State mandamus relief, finding that the judge acted outside his authority. The uncertainty surrounding intellectual-disability determinations

prevents labeling the judge's actions a violation of a ministerial duty. We conditionally grant Allen's petitions for writ of mandamus to the court of appeals.

## Trial Court

Allen faces two capital-murder indictments and the possibility of death sentences in each. Allen filed a motion requesting a pretrial determination by the trial judge on his intellectual disability alleging facts supporting his claim that he suffered from intellectual disability and was therefore exempt from execution. After holding a hearing on Allen's request, the judge granted Allen's motion. At this juncture, the judge has not yet held the hearing or made an intellectual-disability determination in either case. The State sought mandamus relief in this Court, but the State's motion for leave to file a petition for writ of mandamus was denied.[1] The State subsequently sought and obtained mandamus relief in the Dallas Court of Appeals.[2] This Court granted Allen's motion for leave to file a petition for writ of mandamus challenging the court of appeals' judgment.

## Court of Appeals

Although noting the absence of established procedures for addressing intellectual-disability issues in capital cases, the court of appeals found the law sufficiently clear to hold

---

[1] *In re Craig Watkins*, Nos. WR-82,011-01 & WR-82,012-01 (Tex. Crim. App. Aug. 29, 2014).

[2] *In re Craig Watkins*, Nos. 05–14–01167–CV & 05–14–01168–CV, 2014 WL 5903105 (Tex. App.—Dallas Oct. 3, 2014) (mem. op, not designated for publication).

that the judge acted without authority to grant Allen's request.[3]  The court's analysis began by looking to this Court's previous cases stating that a finding of intellectual disability is an issue of fact.  The court of appeals then looked to the following statutes found in the Texas Code of Criminal Procedure:  (1) Article 37.071, § 2, stating that once a jury finds a capital defendant guilty, the court must conduct a sentencing proceeding "before the trial jury"; (2) Articles 1.13(a) and 1.14(a), providing that a defendant facing the death penalty may not waive a jury trial on punishment; and (3) Article 36.13, mandating that "[u]nless otherwise provided in this Code, the jury is the exclusive judge of the facts ."[4] The court concluded that, "Because intellectual disability is an issue of fact that is relevant to the determination of punishment, under Texas criminal procedure as it presently stands, the factual determination whether the defendant is intellectually disabled must be made by the jury that determines the guilt or innocence of the defendant."[5]

## Mandamus Standard

Mandamus relief is appropriate only when a relator establishes (1) that he has no adequate remedy at law to redress his alleged harm, and (2) that what he seeks to compel is a ministerial act, not a discretionary or judicial decision.[6]  A relator satisfies the ministerial-

---

[3]  *Id.* at *5–6.

[4]  *Id.* at *5.

[5]  *Id.*

[6]  *Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex. Crim. App. 2011).

act component when he can show that he has a clear right to the relief sought.[7] "A clear right to relief is shown when the facts and circumstances dictate but one rational decision 'under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles.'"[8] A ministerial act, by its nature, does not involve the use of judicial discretion;[9] it must be positively commanded and so plainly prescribed under the law as to be free from doubt.[10] We have said that while a trial court has a ministerial duty to rule upon a properly filed and timely presented motion, it generally has no ministerial duty to rule a certain way on that motion.[11] It is proper to order a court to rule a particular way only when the law invoked is "definite, unambiguous, and unquestionably applies to the indisputable facts of the case."[12]

We review the court of appeals' judgment on a petition for writ of mandamus under a de novo review of the two-pronged test.[13] Because we find the mandamus standard's

---

[7] *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013).

[8] *Id.* (citing *Bowen*, 343 S.W.3d at 810).

[9] *Banales v. Court of Appeals for the Thirteenth Judicial Dist.*, 93 S.W.3d 33, 35 (Tex. Crim. App. 2002); *State ex rel. Hill v. Court of Appeals for the Fifth Dist.*, 34 S.W.3d 924, 927 (Tex. Crim. App. 2001).

[10] *State ex rel. Hill*, 34 S.W.3d at 928.

[11] *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007).

[12] *Id.*

[13] *In re State ex rel. Weeks*, 391 S.W.3d at 121–22; *Bowen*, 343 S.W.3d at 810 n.6 ("The State . . . argues that it is the court of appeals's denial of mandamus relief that we

second prong dispositive in resolving the present case, we do not answer whether the State has an adequate remedy at law challenging the judge's ruling.

## No Clear Right to Relief

The State's assertion to the judge that "there is no express statute governing how intellectual disability is litigated" is undeniably true. However, we disagree with the court of appeals' conclusion that, when read together, several Code of Criminal Procedure articles unquestionably establish that Allen's pretrial motion compelled but one rational decision under unequivocal and well-settled legal principles: a denial.

We find little help in Article 37.071, § 2, which provides, in part, that upon finding a defendant guilty of capital murder in a case in which the State is seeking the death penalty, a separate punishment proceeding is required "before the trial jury" to determine whether the defendant shall be sentenced to death or life imprisonment.[14] The statute currently provides no statutory, procedural scheme defining how intellectual-disability issues should be handled. The court of appeals seizes on the "before the trial jury" phrase, but to consider that persuasive invites circular reasoning. Section 2 applies only when the "State seeks the death penalty." And if a trial judge finds a defendant exempt from the death penalty pretrial,

---

should be reviewing rather than the respondent's ruling directly . . . .[I]n practice it makes little difference whether we purport to review the court of appeals's mandamus ruling or the trial court's order . . . . Either way, we review the appropriateness of the trial court's conduct . . . . essentially by undertaking a 'de novo application of the two pronged test' for mandamus relief.")

[14] TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2 (West 2011).

presumably only the possibility of lifetime confinement remains.[15] Can we then say with any degree of confidence that the State is still seeking the death penalty at the moment a jury finds a defendant guilty of capital murder? If not, § 2 does not apply, and it would be illogical to use its language to support a conclusion that the judge in this case acted contrary to established law.

We also fail to find guidance on the present issue in Articles 1.13(a), 1.14(a), and 36.13. In the cases' current posture, we find Articles 1.13(a) and 1.14(a), which limit a defendant's ability to waive a jury trial when the State seeks the death penalty, to be irrelevant. By considering these statutes supportive of its position, the court of appeals equates Allen's pretrial motion with a jury-trial waiver. In our minds, the proverbial dots remain unconnected, and therefore we do not share the court of appeals' confidence in the statutes' applicability to Allen's motion.

We further find no relevant mandate in Article 36.13's command that "[u]nless otherwise provided in this Code, the jury is the exclusive judge of the facts, but is bound to receive the law from the court and be governed thereby." The statute has been frequently cited to support the common notion that a jury decides facts, and the court applies the law to the facts.[16] It also supports the unremarkable legal principles that a jury is required to determine the elements of the offense in a jury trial and is the sole judge of the evidence's

---

[15] *See id*. § 1.

[16] *See, e.g.*, *Crabtree v. State*, 389 S.W.3d 820, 832–33 (Tex. Crim. App. 2012) (distinguishing the factfinding duties of a jury from the law-giving duties of a judge).

weight.[17]  Whether the scope of this broadly worded statute encompasses Allen's request for a pretrial intellectual-disability determination is less clear.  While an intellectual-disability determination is necessarily fact-intensive, our precedents addressing these determinations never invoked Article 36.13 as informative on the issue of the proper factfinder of intellectual disability.

### Case Law

Our case law provides only marginally more guidance than that found in existing statutes.  In 2002, the United States Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment exempts intellectually disabled[18] criminals from the death penalty.[19]  However, the Supreme Court left to the states the development of the substantive law and procedural mechanisms giving effect to its decision.[20]  In *Ex parte Briseno*, this Court created a "stop-gap" definition of intellectual disability during a legislative interregnum to provide temporary judicial guidelines in addressing *Atkins*

---

[17]  *See, e.g.*, *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012) (holding that, in a driving-while-intoxicated trial, whether appellant was operating his motorcycle was a question of fact to be resolved by the jury); *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

[18]  This opinion substitutes the term "intellectual disability" for "mental retardation." *See Hall v. Florida*, 134 S. Ct. 1986, 1991 (2014) ("Previous opinions of this Court have employed the term 'mental retardation.' This opinion uses the term 'intellectual disability' to describe the identical phenomenon."). *See also* TEX. HEALTH & SAFETY CODE ANN. § 591.003(7-a), (13) (West 2011).

[19]  *Atkins v. Virginia*, 536 U.S. 304, 318–21 (2002).

[20]  *Id*. at 317; *Ex parte Briseno*, 135 S.W.3d 1, 4–5 (Tex. Crim. App. 2004).

claims.[21]  With a great deal of trepidation, we adopted a definition of intellectual disability

and guidelines that, without subsequent legislative action, remain the law today despite the

Court's intention that they be temporary.[22]  Although Briseno's *Atkins* claim was presented

in a post-conviction proceeding, *Briseno* recognized that *Atkins* itself does not require

intellectual-disability determinations to be made by a jury.[23]  Although a jury finding on

intellectual disability is not constitutionally required, we have endorsed, but have not

mandated, the submission of a "special issue" on intellectual disability to the jury and held

that submission to the jury sufficiently protects a defendant's Eight Amendment rights.[24]

Although not definitive, we find *Hunter v. State*,[25] a factually similar case to that at

bar, to be the most informative authority on the present issue.  The presiding judge of

Hunter's capital-murder trial denied him a pretrial intellectual-disability determination by the

judge, or in the alternative, a separately impaneled jury.  *Hunter*'s analysis began by reprising

*Briseno*'s admonishment: "Although a jury determined the issue of mental retardation in this

---

[21]  *Briseno*, 135 S.W.3d at 4–5.

[22]  *Id.*

[23]  *Id.* at 10 ("There was certainly no indication from the Supreme Court in *Atkins* that the fact of mental retardation is one that a jury, rather than a judge, must make.").

[24]  *See, e.g.*, *Williams v. State*, 270 S.W.3d 112, 132 (Tex. Crim. App. 2008); *Neal v. State*, 256 S.W.3d 264, 272 (Tex. Crim. App. 2008); *Hunter v. State*, 243 S.W.3d 664, 671 (Tex. Crim. App. 2007); *Gallo v. State*, 239 S.W.3d 757, 770 (Tex. Crim. App. 2007); *Lizcano v. State*, No. AP-75,879, 2010 WL 1817772, *8–9 (Tex. Crim. App. May 5, 2010) (not designated for publication).

[25]  243 S.W.3d at 672.

case, it is important to note at the outset that a jury determination of mental retardation is not required."[26] Nor did *Briseno* address when a intellectual-disability determination is to be made.[27] The *Hunter* Court held that, because there is no legislation or constitutional requirement directing when or by whom an intellectual-disability determination is to be made, the judge did not err in denying Hunter's request.[28] *Hunter*'s rationale suggests, if only by implication, that the decision whether to grant a request to determine intellectual disability pretrial still encompasses a significant amount of judicial discretion.

It is suggested that our decisions in *State ex rel. Lykos v. Fine*[29] and *State ex rel. Watkins v. Creuzot*[30] support a conclusion that mandamus should issue.[31] Our holdings in these cases are not squarely on point. *Lykos* and *Fine* did not address real-party-in-interest intellectual-disability claims, but rather an "as applied" constitutionality claim to the death penalty itself and a claim asserting the delay of a retrial prevents the defendant from presenting a complete mitigation case, respectively. At a minimum, our opinion in *Hunter* muddies the water where intellectual-disability claims are concerned. Taking *Fine* and *Creuzot* into consideration with our other precedents, we do not find a denial of Allen's

---

[26] *Id.* at 667 (citing *Schiro v. Smith*, 546 U.S. 6, 7 (2005)).

[27] *Id.* at 672.

[28] *Id.*

[29] 330 S.W.3d 904 (Tex. Crim. App. 2011).

[30] 352 S.W.3d 493 (Tex. Crim. App. 2011).

[31] *Post*, at 3 (Newell, J., dissenting).

motion to be positively commanded and so plainly prescribed under the law as to be free from doubt.[32] Further, to find Allen's motion unjustiable for lack of ripeness pretrial ignores the immediate effect the State's notice in seeking the death penalty has upon the nature of the case. It affects a defendant's counsel's pretrial mitigation and punishment investigations, the appointment of punishment experts, voir dire proceedings, to list only a few implications of the State's notice. More importantly, we cannot conclude with the requisite certainty that these issues are too remote to consider the motion unripe.

If the law surrounding a court's action is unclear, mandamus relief may not issue despite how unwise we think the action may have been. At times, it is an exercise akin to judicial restraint. The dissenters understand this opinion to modify the Legislature's procedural scheme in death-penalty cases[33] or that this Court judicially approves of deciding the intellectual-disability issue pretrial.[34] These conclusions stem from a misreading of this opinion, and they lose sight of the case's procedural posture. This case, like all mandamus cases, must be decided on the existing law alone. Unfortunately, we find none that supports a conclusion that granting Allen's request for a pretrial intellectual-disability determination deviated so far from well-settled legal principles to be considered acting outside a judge's authority. Even if we were inclined to again act when the Legislature has not, a mandamus

---

[32] *See State ex rel. Hill*, 34 S.W.3d at 928.

[33] *See Post*, at 3 (Alcala, J., dissenting).

[34] *Post*, at 1 (Newell, J., dissenting).

proceeding is not the appropriate place to interpret statutory language, clarify this Court's precedent, or create law where there is none. We hold that the absence of existing law precluded granting the State's mandamus relief below; it is by no means an endorsement of the judge's action.

Judge Alcala maintains that, because the judge whose act was the subject of the court of appeals' opinion no longer is the presiding judge, we are required to abate these proceedings for a response from the current presiding judge under Texas Rule of Appellate Procedure 7.2(b).[35] The assertion stems from misreading the rule. Rule 7.2(b) states, in relevant part, "If the case is an original proceeding under Rule 52, the court must abate the proceeding to allow the successor to reconsider the original party's decision." Rule 52 governs only original proceedings in the Supreme Court of Texas and the courts of appeals, as evidenced by its location under Section Three, entitled "Original Proceedings in the Supreme Court and the Court of Appeals." Instead, this mandamus application comes to this Court by way of "Rule 72. Extraordinary Matters." Like Rule 52, Rule 72 is found under a section that affects its application—"Section Five: Proceedings in the Court of Criminal Appeals." We are therefore not bound by Rule 7.2(b)'s requirement to abate.

Further, if we were to abate for a response from the current presiding judge after reconsidering his predecessor's ruling, it would do nothing to correct the court of appeals' erroneous conclusion that a trial judge has no discretion when presented with a request for

---

[35] *Post*, at 5–9 (Alcala, J., dissenting).

a pre-trial hearing on intellectual disability. And by addressing the merits of the case we do not limit the presiding judge's ability to reconsider his predecessor's ruling; we only remove the inherent influence of a superior court's opinion expressing its view on what it perceives to be the only permissible ruling.

### Legislative Action

Without legislation, case law has necessarily sculpted the boundaries of intellectual disability in a piecemeal fashion since 2002. In terms of issues surrounding intellectual-disability determinations, we still find ourselves in the same legislative "interregnum" that existed in 2004. Public-policy arguments quickly pile up on both sides of the debate on when and by whom intellectual-disability determinations should be made; several have been presented to this Court. But they find utility only in the Legislature and should be directed there.

While we withhold normative judgment, the need for a statutory scheme on this score is readily apparent, and its continued absence portends serious consequences for our criminal-justice system. Without a unified procedure, intellectual-disability determinations may vary from county to county, court to court, and case to case. As the present cases and authorities cited in this opinion illustrate, some judges may prefer to address the issues pretrial, others by submission of a special issue to the jury. The gravity of defendants' intellectual-disability claims are too weighty to be subject to such disparity. The uncertainty may come at a cost to the State as well. If determined pretrial, it remains to be seen whether

the State is afforded an adequate remedy should the judge conclude, incorrectly in the State's opinion, that a defendant is exempt from the death penalty as a result of his intellectual disability. The trial- and sentence-altering decision may escape appellate review entirely under existing law.[36] We now make explicit what we before expressed only tacitly: Legislation is required.

## Conclusion

Because we find that Allen's request for a pretrial determination of intellectual disability does not call for the execution of a ministerial act, we conditionally grant mandamus relief and order the court of appeals to rescind its judgment conditionally granting the State's (as Relator below) petitions for writ of mandamus. The writs of mandamus will issue only in the event that the court of appeals fails to comply with this opinion.

DELIVERED: May 13, 2015

PUBLISH

---

[36] *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 912–14 (Tex. Crim. App. 2011) (holding that the State did not have an adequate remedy at law because Code of Criminal Procedure article 44.01 does not permit the State to appeal a pretrial ruling that the death penalty is unconstitutional). *Accord In re Watkins*, 2014 WL 5903105 at *6.