

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE: THE STATE OF TEXAS, | § | No. 08-24-00378-CR |
| Relator. | § | AN ORIGINAL PROCEEDING IN |
| | § | MANDAMUS |
| | § | |

**O P I N I O N**

Relator, the State of Texas, petitions this Court to issue a writ of mandamus directing Respondent, the Honorable Sam Medrano, Judge of the 409th District Court of El Paso County, to unseal and vacate all unauthorized, non-*Ake ex parte* motions, orders, and contents entered to date in the criminal prosecution styled *The State of Texas v. Patrick Wood Crusius*, trial court cause number 20200D02631.[1] We conditionally grant in part and deny in part. We conditionally grant relief as to three identified *ex parte* orders—entered April 18, 2023, July 16, 2021, and October 5, 2021—which the trial court entered without express authorization. We deny the remainder of the State's request as to any remaining unidentified orders that may have been entered *ex parte*.

---

[1] *See Ake v. Oklahoma*, 470 U.S. 68 (1985).

## I. BACKGROUND

This mandamus proceeding arises out of the criminal prosecution of Real Party in Interest, Patrick Wood Crusius. A grand jury charged Crusius with one count of capital murder of multiple persons by shooting 23 persons with a firearm, and 22 counts of aggravated assault with a deadly weapon against other persons. Relator, the State of Texas, followed the charges by filing a notice of intent to seek the death penalty. The case is currently pending before the 409th Judicial District Court of El Paso County. Crusius was originally indicted in 2019 and re-indicted in 2020. The trial court granted the State's motion to carry over the filings from the original cause number into trial cause number 20200D02631, the criminal proceeding now pending in the trial court. On various dates over the course of the past four years and following re-indictment, the case summary of the 409th District Court shows the trial court has issued numerous orders that are titled, "Order Sealing Record."[2]

On September 9, 2024, Crusius filed an omnibus motion seeking discovery to uncover purported misconduct by the State, and for the court to sanction the State's alleged misconduct by dismissing the indictment, or, in the alternative, barring the imposition of the death penalty. The motion included an attached affidavit sworn to by Assistant Chief Kevin Lanahan of the El Paso County Sheriff's Office, who oversees the operations of the Downtown Detention Facility where Crusius has been detained as an inmate since August 4, 2019. Assistant Chief Lanahan avers that the Operations Section of the facility has released copies of visitor logs and visitor slips, including records that documented visits with Crusius's defense team. By his motion, Crusius requested materials concerning the State's alleged violation of the trial court's gag order, any exculpatory

---

[2] In its amended petition, the State represents that approximately 230 such orders are listed on the case summary of the trial cause number 20200D02631.

2

evidence, non-privileged notes from different interviews and investigations, and information concerning the alleged violation of his Sixth Amendment right to counsel. The motion further contended that the requested materials would help the defense team and the trial court to "understand the extent of the [District Attorney's Office's] involvement in the misconduct[.]" In the alternative, Crusius requested that materials be provided *in camera* to remove any privileged documents before disclosure.

The State contends in its mandamus petition that it first learned, via the filing of Crusius's September 9 motion, that the trial court had entered at least three unauthorized *ex parte* orders. By its mandamus petition, the State argues the trial court entered three orders as follows: (1) an *ex parte* order on April 18, 2023, which "allegedly prohibited [Crusius] from receiving certain medical treatment from El Paso County Jail personnel," and (2) two *ex parte* orders on July 16, 2021, and October 5, 2021, that both "allegedly instructed the El Paso County Jail to 'preserve and not destroy or alter any surveillance tapes of [Crusius or his] housing location.'" The State notes that it has never seen the three orders issued and it relies on Crusius's representation of their substance.

On October 18, 2024, the State filed two motions in the trial court. First, it filed a motion to unseal all non-*Ake ex parte* motions, orders, and records that were entered *ex parte* and not authorized by law. The State contended it could not adequately address the complaints raised by Crusius's September 9 motion regarding orders entered in the cause for which it was not privy. Second, the State filed a motion for continuance of the hearing then set for October 31, 2024, and November 1, 2024, to address the alleged prosecutorial misconduct. As a third motion, the State filed on October 24, 2024, an objection to *ex parte* proceedings and entry of *ex parte* orders not expressly authorized by law. After holding a hearing, the trial court ruled that four different orders

would be unsealed; but it otherwise denied the State's motion to unseal all *ex parte* motions, orders, and contents, including the three orders identified by the State in this mandamus action.[3] The State now seeks a writ of mandamus ordering the trial court to unseal and vacate any and all sealed *ex parte* orders. However, the State only identifies three orders that it brought to the trial court's attention in its October 18 motion, and the trial court denied relief. Accordingly, our focus here is limited to the three orders identified and ruled on by the trial court.

On the same day it filed its petition for writ of mandamus, the State also filed an emergency motion for a stay of trial court proceedings. Specifically, the State requested a stay of the hearings set for October 31, 2024, and November 1, 2024. We denied the motion in part to the extent we allowed the hearings to go forward. However, we granted the motion in part by ordering the trial court to stay further proceedings that directly related to the substance of its orders which are the subject of this mandamus petition.

## II. MANDAMUS REVIEW

To be entitled to mandamus relief, the relator must show two things: (1) that relator has no adequate remedy at law to redress the alleged harm; and (2) that what relator seeks to compel is a ministerial act. *In re City of Lubbock*, 666 S.W.3d 546, 553, 555 (Tex. Crim. App. 2023) (citing *In re State ex rel. Weeks*, 391 S.W.3d 117, 123 (Tex. Crim. App. 2013)). The "no adequate remedy at law requirement," or the first prong of the test, requires a showing that a remedy at law, "though it technically exists, may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate." *In re State ex rel. Weeks*, 391 S.W.3d at

---

[3] The trial court's order effectively unsealed the following four orders: defendant's *ex parte* non-*Ake* motions for transcription entered October 2, 2024; for transport for medical examination entered October 13, 2023; for provision of personal items entered June 23, 2023; and for compliance with prior order for access to a pen and eyeglasses entered July 25, 2023.

4

122. And the "ministerial-act requirement," or the second prong, requires that the relief sought must be clear and indisputable such that its merits are beyond dispute and there is nothing left to the exercise of discretion or judgment. *Id.* at 123. A clear right to relief is shown when the facts and circumstances dictate but one decision "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex. Crim. App. 2011). When a trial court acts beyond the scope of its lawful authority, a clear right to relief exists. *In re City of Lubbock*, 666 S.W.3d at 553. Mandamus relief is available for a novel issue or one of first impression with uncontested facts when the law points to but one clear result. *Weeks*, 391 S.W.3d at 123.

### A.   No adequate remedy at law

In this instance, the State satisfies the first prong necessary for mandamus relief. As a matter of law, the State can only appeal certain actions by the trial court. *See* Tex. Code Crim. Proc. Ann. art. 44.01 (addressing permitted appeals by the state of orders entered in a criminal case). An unauthorized *ex parte* order is not included in the list of appealable orders. *Id*. Because the State "has no right to appeal respondent's order . . . this satisfies the no adequate legal remedy mandamus requirement." *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 203 (Tex. Crim. App. 2003).

With the first prong of the test satisfied, we next address whether the State has established a clear and indisputable right to the relief sought.

### B.   Clear right to relief

#### (1)   Controlling law

In *In re City of Lubbock*, the Court of Criminal Appeals more recently addressed the permissibility of *ex parte* proceedings in the context of criminal prosecutions. 666 S.W.3d at 548.

At the outset, the Court of Criminal Appeals explicitly noted that "American courts function in an adversarial system of adjudication." *In re City of Lubbock*, 666 S.W.3d at 556. It explained this system "relies on a neutral and passive decision maker to adjudicate disputes after they have been aired by the adversaries in a contested proceeding." *Id*. Absent express authorization, the system requires that parties *not* communicate with the trial court—regarding matters pending before the court—unless all parties are present. *Id*. at 558. Yet, as the Court further explained, the system still recognizes that a need may nonetheless arise for an *in camera* inspection of records by a trial court without the parties' presence. *Id*. Thus, distinctions are necessarily made between prohibited *ex parte* communications and permissible *in camera* inspections. *Id.* at 555.

An "*ex parte*" communication covers "communication that concerns matters between a lawyer representing a client and a judicial officer," which occur outside the presence and without the consent of the other parties or their representatives. *Id.* at 555. In contrast, an "i*n camera*" inspection refers to action more commonly taking place in a judge's chambers. *Id*. "Trial courts can inspect evidence *in camera* when there is a dispute about whether such evidence can be disclosed." *Id.* at 555–56. In contrast, judges are prohibited from permitting or considering *ex parte* communications from a party to pending litigation unless expressly authorized by law. *Id.* at 556–57 (citing Tex. Code Jud. Conduct, Cannon 3(B)(8), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. B and *Anderson v. State*, 625 S.W.3d 128, 131 (Tex. Crim. App. 2021)). Similarly, lawyers are prohibited from communicating with judges concerning pending matters other than as permitted by law. *Id.* at 557 (citing Tex. Disciplinary Rules Prof'l Conduct 3.05, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A-1). Of note, an *in camera* inspection involves both parties, even if the inspection occurs in the parties' absence.

To be clear, *ex parte* communications are authorized by law but only in limited circumstances. *See id.* at 558–560 (citing Tex. Code Crim. Proc. arts. 18A.055(c) (providing for the application for an interception order), *Ake*, 470 U.S. at 70 (addressing an indigent defendant's constitutionally required access to a psychiatric examination and assistance as needed to prepare an effective defense based on his or her mental condition), and *Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997) (en banc) (holding that an indigent defendant is entitled, upon proper request, to make an *Ake* motion *ex parte* so as not to disclose defensive theories to the prosecution)). In *Ake*, the United States Supreme Court held that due process entitled an indigent defendant to the appointment of a psychiatrist to assist in his defense when he has made a preliminary showing that sanity at the time of the offense was likely to be a significant factor at trial. *Ake*, 470 U.S. at 83. "When the defendant is able to make an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent." *Id.* at 82–83. In *Williams*, the Court of Criminal Appeals specifically held that an indigent defendant is entitled, upon proper request, to make his *Ake* motion for expert assistance *ex parte*. *Williams*, 958 S.W.2d at 194. There, the Court determined the trial court erred in overruling the defendant's request to present his *Ake* motion for the assistance of an expert *ex parte*. *Id.* at 194. If the motion and hearing were not *ex parte*, the defendant would be forced to choose between foregoing the appointment of an expert that he is constitutionally entitled to retain or disclose to the State the details of his defensive theories. *Id.* at 193.

Relying on these principles and authorities, the Court of Criminal Appeals detailed the limits of holding a permissible, *ex parte* hearing in a criminal proceeding. In *In re City of Lubbock*, the trial court entered an *ex parte* order of production of documents from a third-party without

7

providing contemporaneous notice to the district attorney's office. 666 S.W.3d at 554–55. Ultimately, the Court of Criminal Appeals held the trial court lacked authority to enter an *ex parte* discovery order and no statutory or constitutional authorization applied to the circumstance. *Id.* at 558. The Court reiterated that *Ake* and *Williams* had not been extended beyond the context of expert assistance and appointment. *See id.* at 560. "Further, the rationale justifying *ex parte* proceedings in *Ake* and *Williams* [did] not translate to a general request for discovery." *Id.* at 563. Because there was no express authorization for the *ex parte* proceedings, the Court granted mandamus relief and voided the orders entered. *Id.* at 566.

More recently, the Court of Criminal Appeals described the holding of *In re City of Lubbock* as an analog to a sealed *ex parte* order that was not a request for records but nonetheless compelled the University of Texas Medical Branch-Galveston to conduct brain imaging on a defendant who had been convicted of capital murder who filed a post-conviction habeas petition. *In re Univ. of Tex. Med. Branch-Galveston*, 677 S.W.3d 696, 697 (Tex. Crim. App. 2023). The Court noted that, although the case before them did not involve a request for records, it was analogous to *In re City of Lubbock*. *See id.* The Court again held there was no express authority for the trial court to enter such an *ex parte*, non-expert order. *Id.* at 698.

### (2) Analysis

Here, the State contends the July 16, 2021, October 5, 2021, and April 18, 2023, orders were each rendered *ex parte* without statutory or constitutional authority. Although Crusius does not concede the orders were "improperly litigated *ex parte*," it does not escape our notice that he provides no lawful basis for their entry as *ex parte* orders. Nevertheless, Crusius heavily argues that *In re City of Lubbock* is inapposite when applied retroactively to orders entered previous to its issuance. In citing two cases—both predating *In re City of Lubbock* and neither involving any *ex*

*parte* communications—Crusius posits that a "procedural change in law cannot be used to invalidate steps previously taken in pending litigation[] but will apply to any subsequent proceedings after [the] effective date." *Hunter Indus. Facilities, Inc. v. Tex. Nat. Res. Conservation Comm'n*, 910 S.W.2d 96, 110 (Tex. App.—Austin 1995, writ denied) (citing *Ex parte Abell*, 613 S.W.2d 255, 260 (Tex. 1981)).

Responding, the State points out that *In re City of Lubbock* made no mention of it announcing a new rule; but rather, the case was decided based on long-standing ethical rules and other prohibitions against *ex parte* communication in the absence of a constitutional or statutory exception. We agree with that characterization. *In re City of Lubbock* examined the express exception laid out in *Ake* and *Williams*, which permitted *ex parte* communication concerning the appointment or assistance of an expert for the defense. *See In re City of Lubbock*, 666 S.W.3d at 551. The Court of Criminal Appeals rejected the contention that *ex parte* proceedings are "widely accepted," noting they are "only widely accepted in the context of appointing defense experts, because such proceedings have been expressly authorized by *Ake* and *Williams*." *Id.* at 564. Accordingly, we conclude the State has established the trial court lacked the express authority to enter the three *ex parte* orders at issue here.

### (3) The motion to forward sealed orders

As a final matter, we address the State's motion filed with this Court, addressing the totality of sealed orders rendered during the pendency of this criminal proceeding. Specifically, the State's motion advances a request for a two-step process. First, the State moves this Court to issue an order directing the District Clerk of El Paso County to forward to this Court *all* sealed orders and their contents in cause numbers 20190D04878 and 20200D0263, which are both styled *The State of Texas v. Patrick Wood Crusius*. Second, after said orders and their contents are received by this

9

Court, the State requests we examine each sealed order to determine whether there are any "non-*Ake ex parte* orders" issued beyond the three orders it has already identified to date. After giving the matter due consideration, we deny the State's motion.

We make no ruling regarding any sealed orders that have not yet been re-examined with the benefit of this decision—except to the extent we reiterate that very few *ex parte* matters are authorized by law. As a well-recognized exception, however, *ex parte* communication concerning the appointment or assistance of an expert for the defense is permitted by law. *See id.* at 551. Otherwise, the Court of Criminal Appeals has advised that "[t]he prohibition against *ex parte* communications absent that express authorization is clear and indisputable." *Id.* at 566.

### III. CONCLUSION

We sustain the State's sole issue in part and conditionally grant in part it's petition for writ of mandamus. Because no express authorization supports the trial court's *ex parte* orders of July 16, 2021, October 5, 2021, and April 28, 2023, each of these orders is void. We direct the Respondent to vacate the July 16, 2021, October 5, 2021, and April 28, 2023, orders. We deny all other relief without prejudice. We trust Respondent will promptly comply with this opinion and order. The writ will issue only in the event Respondent fails to comply. Our prior order granting emergency relief and a partial stay of the trial court proceedings in the 409th District Court is hereby vacated.


GINA M. PALAFOX, Justice


December 9, 2024

Before Alley, C.J., Palafox and Soto, JJ.

10